**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BARBARA KING,<br>individually and on behalf of the class<br>defined herein,<br><br>          Plaintiff,<br><br>    vs.<br><br>RESURGENCE FINANCIAL, LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILED:   JUNE 9 , 2008
08CV3306
JUDGE ST. EVE
MAGISTRATE JUDGE COX
NF

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE CLAIMS

### INTRODUCTION

1.     This action seeks redress for the conduct of defendant, a debt buyer, in filing collection actions on purported debts to which it did not have lawful title.

2.     There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

3.     There are multiple  reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt.  Smith v. Mallick, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result).  See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D. Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

1

4.      In Wood v. M&J Recovery LLC, CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D. N.Y., Apr. 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved.  Shekinah alleged that it sold a portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt.  Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

5.      In Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C., IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D. Ind., Apr. 25, 2001), later opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

6.      An article that appeared in the trade press shortly before the extension of the Illinois Collection Agency Act to debt buyers stated:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent....

Corinna C. Petry, Do Your Homework; Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises, Collections & Credit Risk, March 2007, pg. 24, Vol. 12, No. 3.  The article quoted an officer of an Illinois debt buyer who had purchased, or ostensibly purchased, bad paper.

7.      Courts have also dismissed numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts.  In re Foreclosure Cases, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio, Oct. 31, 2007); In re Foreclosure Cases, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D.

Ohio, Nov. 27, 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio 2007); In re
Foreclosure Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D. Ohio, Dec. 27,
2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D.
Ohio, Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist. LEXIS
86214 (S.D. Ohio, Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist.
LEXIS 86215 (S.D. Ohio, Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio 1282;
2008 Ohio App. LEXIS 1103 (Ohio App., Mar. 20, 2008) (judgment for plaintiff reversed
because it failed to introduce assignment or establish that it was the holder of the note and
mortgage); Deutsche Bank National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U;
18 Misc. 3d 1115A; 2008 N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct.,
Jan. 14, 2008); HSBC Bank USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14
Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., Jan. 30, 2008); HSBC
Bank USA, N.A., v. Cherry, 21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y.
Misc. LEXIS 8279; 239 N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsche Bank
National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y. Sup.
Ct. 2007).

      8.    Debt buyer American Acceptance filed a lawsuit alleging that a broker of
charged-off debts sold it debts to which it did not have title.  American Acceptance Co. v.
Goldberg, 2:08cv9 (N.D. Ind.).  Another debt buyer, Hudson & Keyse, filed suit alleging that the
same debt broker obtained information about consumer debts owned by Hudson & Keyse and
used the information to try to collect the debts for its own account, even though it didn't own
them.  Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D. Fla., filed
Nov. 5, 2007).  A similar suit, alleging that the broker resold accounts it did not own, was filed by
Old National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D.
Fla., Jan. 24, 2008).  The same debt broker is accused in another complaint of selling 6,521
accounts totaling about $40 million face value which it did not own.  RMB Holdings, LLC v.

Goldberg & Associates, LLC, 3:07-cv-00406 (E.D. Tenn., filed Oct. 29, 2007).  Other debt

buyers have voiced similar complaints.  "Florida Broker Faces Multiple Lawsuits," Collections &

Credit Risk, April 2008, p. 8.

   9. In order to protect Illinois residents against this sort of abuse, the Illinois

Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as

"collection agencies."  This makes applicable the special assignment requirements in ICAA §8b,

225 ILCS 425/8b.  Illinois courts had held prior to the amendment that a party that was required

to but did not have such an assignment does not have a valid claim and that the defendant in such

a case is entitled to judgment.  Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257;

698 N.E.2d 702 (4th Dist. 1998).

   10. Section 8b of the ICAA provides:

> **Sec. 8b.  An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**
>
> > **(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**
> >
> > > **(i) the effective date of the assignment; and**
> > >
> > > **(ii) the consideration for the assignment.**
> >
> > **(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**
> >
> > **(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**
> >
> > **(d) No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**
> >
> > **(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the**

4

**requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

11.    Furthermore, the assignment must be attached to the complaint. <u>Candice Co. v. Ricketts</u>, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

12.    Finally, the assignee is required "in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title...." 735 ILCS 5/2-403(a).

13.    Defendant Resurgence Financial, LLC, a debt buyer regulated by the ICAA, systematically files collection lawsuits without compliance with ICAA §8b and, therefore, without valid claims.

14.    In this action, plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f,  and ICAA §9.

## VENUE AND JURISDICTION

15.    This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

16.    Venue and personal jurisdiction in this District are proper because:

a.    Defendant's collection communications and activities impacted plaintiff within this District;

b.    Defendant does business and is located within this District.

## PARTIES

17.    Plaintiff is an individual who resides in the Northern District of Illinois.

18.    Defendant Resurgence Financial, LLC is a limited liability company organized under Illinois law with offices at 4100 Commercial Avenue, Northbrook, Illinois 60062.

19.    Defendant Resurgence Financial, LLC does business in Illinois.  Its registered agent and office are Nathan M. Grossman, 20 S. Clark, Suite 1650, Chicago, IL 60603.

20.    Defendant Resurgence Financial, LLC is engaged in the business of

purchasing charged-off consumer debts and enforcing the debts against the consumers.  Such
debts are often referred to as "zombie debts."  Eileen Ambrose, "Zombie Debt; Debt Can Come
Back to Haunt You Years Later," The Baltimore Sun, May 6, 2007, p. 1C ("Zombie debt is just
that - an old debt that won't die off. It may be passed from one debt buyer to another, for years,
until one day consumers are startled to find a collector demanding payment.").

   21. Defendant Resurgence Financial, LLC pays an average of less than ten
cents on the dollar for the debts it purchases.

   22. Defendant Resurgence Financial, LLC regularly uses the mails and
telephones to conduct its business.

   23. Defendant Resurgence Financial, LLC has been the plaintiff in more than
500 Illinois lawsuits filed since January 1, 2008 and seeking to collect consumer debts.

   24. Because the purported obligations were originally owed to other entities
and were charged off prior to purchase, Resurgence Financial, LLC is a "debt collector" as
defined in the FDCPA.

   25. Resurgence Financial, LLC is also a "collection agency" as defined in the
ICAA.

## FACTS RELATING TO PLAINTIFF

   26. On or about April 14, 2008, Resurgence Financial, LLC filed suit against
plaintiff Barbara King in the Circuit Court of Cook County to collect a purported debt incurred
for personal, family or household purposes.  Resurgence Financial, LLC claimed to have
purchased the debt, which was alleged to be a Providian credit card charged off December 31,
2003.

   27. The complaint did not attach any assignment that complied with §8b of the
Collection Agency Act.  A copy of the complaint and exhibits are attached as Appendix A hereto.

   28. On information and belief, defendant did not have an assignment that
complied with §8b of the Collection Agency Act.

29.    Instead, Resurgence Financial, LLC:

a.    Attached a 2005 "bill of sale" in which "Sherman Acquisition, LLC" purported to transfer "the Accounts listed in the Account Schedule attached (as may be amended in accordance with the Agreement) as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise...." The account schedule was not provided, and the document does not even remotely comply with the ICAA.

b.    Attached nothing showing that any debt purportedly owed by plaintiff was transferred from Providian to Sherman.

30.    Defendant therefore did not have any sort of valid claim and knew or should have known that it did not have a valid claim.

## FACTS – GENERAL

31.    Defendant Resurgence Financial, LLC regularly files lawsuits on debts it claims to have purchased without having an assignment that complies with §8b of the Collection Agency Act, and therefore, without a valid claim.

32.    Defendant knows or should know it has no valid claim, but files suit anyway because consumers are unlikely to realize the fact.

33.    On information and belief, based on a computer search of court records, defendant has filed over 500 such lawsuits.

## CLASS ALLEGATIONS

34.    Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). The class consists of (a) all individuals (b) against whom defendant Resurgence Financial, LLC filed a collection lawsuit (c) in Illinois (d) subsequent to January 1, 2008, (e) without attaching to the complaint an assignment that complied with §8b of the ICAA.

35.    The class is so numerous that joinder of all members is not practicable.

36.    On information and belief, there are at least 40 individuals against whom defendant Resurgence Financial, LLC filed a collection lawsuit in Illinois subsequent to January

7

1, 2008, without attaching to the complaint an assignment that complied with §8b of the ICAA.

37.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

    a.    Whether defendant engages in a practice of filing lawsuits without attaching to the complaint an assignment that complied with §8b of the ICAA;

    b.    Whether such lawsuits are therefore subject to a defense of which defendant knows or should know about;

    c.    Whether such practice is an unfair or deceptive;

    d.    Whether defendant violates the ICAA.

38.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

39.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

40.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible;

    b.    Members of the class are likely to be unaware of their rights;

    c.    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

41.    Plaintiff incorporates paragraphs 1-40.

42.    The filing and prosecution of collection lawsuits notwithstanding a known defense, in the hope that the consumer will not raise the defense, is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §1692f.

8

43.    Since <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480, 1488 (M.D. Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the hope that the consumer will not realize it exists and will default or pay has been a violation of the FDCPA.

44.    In addition, by filing suit defendant misrepresents that it has proper title to the debt and the right to file suit, when this is not true.

45.    Section 1692e provides:

**§ 1692e.    False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of--**

**(A)    the character, amount, or legal status of any debt; . . .**

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

46.    Section 1692f provides:

**§ 1692f.    Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

(1)    Statutory damages;

(2)    Actual damages;

(3)    Attorney's fees, litigation expenses and costs of suit;

(4)    Such other and further relief as the Court deems proper.

9

## <u>COUNT II – ILLINOIS COLLECTION AGENCY ACT</u>

47.     Plaintiff incorporates paragraphs 1-40.

48.     Defendant is a "collection agency" as defined in the ICAA.

49.     Section 425/3(d), as amended effective January 1, 2008, brings debt buyers within its purview by providing that "[a] person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it ... [b]uys accounts, bills or other indebtedness and engages in collecting the same."

50.     Previously coverage was limited to a person who "[b]uys accounts, bills or other indebtedness with recourse and engages in collecting the same."

51.      By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as the defendant who buy charged-off debts for their own account.

52.     Defendant violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein.

53.     Defendant negligently or knowingly violated the following provisions of 225 ILCS 425/9:

> **. . .(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.  . . .**

54.     A private right of action exists for violation of the ICAA.  <u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

55.     Plaintiff and the members of the class were damaged as a result.

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and the class and against defendant:

        a.     Compensatory, punitive and nominal damages, as appropriate;

        b.     Costs;

        c.     Such other and further relief as is appropriate.

10

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

56.    Plaintiff incorporates paragraphs 1-40.

57.    Defendant's conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of  §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

58.    Defendant engaged in such conduct in the course of trade and commerce.

59.    Defendant engaged in such conduct for the purpose of obtaining money from and injuring the credit of plaintiff and others.

60.    Plaintiff and the members of the class were damaged as a result.

61.    The filing of collection lawsuits is regularly picked up and reported by credit bureaus.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

a.    Actual damages;

b.    Punitive damages;

c.    An injunction against further violations;

d.    Attorney's fees, litigation expenses and costs of suit;

e.    Such other or further relief as the Court deems proper.

                        _____
                        Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

**<u>JURY DEMAND</u>**

Plaintiff demands trial by jury.

_____
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.

_____
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

08CV3306
JUDGE ST. EVE
MAGISTRATE JUDGE COX
NF

# APPENDIX A

R0051320

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### FIRST MUNICIPAL DISTRICT

| | |
|---|---|
| RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company | Case No. **08 M1 121085** |
| Plaintiff | Amount Claimed: $6,468.72 |
| v. | Return Date: **APR 14 2008** |
| BARBARA J KING    Defendant(s). | |

### VERIFIED COMPLAINT AT LAW

RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company ("Plaintiff"), by and through one of its staff attorneys, complains of BARBARA J KING ("Defendant"), as follows:

1.    Pursuant to 735 ILCS 5/2-403, Plaintiff is proceeding in this cause as the Assignee of Providian Financial Corp ("Providian Financial Corp."), as set forth in the Bill of Sale attached hereto, made a part hereof and marked as Exhibit "A".

2.    Providian Financial Corp and Defendant entered into a Cardmember Agreement ("Agreement"), wherein Providian Financial Corp issued a credit card account number ███████1808 to Defendant and Defendant agreed to pay all amounts charged by the use if the card.    A copy of the Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part hereof and marked as Exhibit "B".

3.    Defendant resides in the State of Illinois.

4.    Thereafter, Defendant incurred charges by use of the credit card.

5.    As set forth in the Affidavit of Plaintiff, attached hereto, made a part hereof and marked as Exhibit "C", there is now due and owing from Defendant to Plaintiff the sum of $6,468.72, of which no part has been paid, although duly demanded.

WHEREFORE, Plaintiff, Resurgence Financial, LLC, an Illinois Limited Liability Company, demands a judgment against the Defendant(s) BARBARA J KING, in the sum of $6,468.72, plus court costs.

Respectfully Submitted,

RESURGENCE FINANCIAL, LLC,
an Illinois Limited Liability Company,
Plaintiff herein,

By One of Its Staff Attorneys

VERIFICATION          John V. Kalantzis, Esq.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

RESURGENCE FINANCIAL, LLC
By One of Its Attorneys

John V. Kalantzis, Esq.

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
Firm No. 41776

Bill of Sale

Sherman Acquisition LLC, for value received and in accordance with the terms of the Purchase and Sale Agreement by and between Resurgence Financial, LLC and SHERMAN ACQUISITION LLC ("Seller"), dated as of September 19, 2005 (the "Agreement"), does hereby sell, assign and transfer to Purchaser, its successors and assigns, all right, title and interest in and to the Accounts listed in the Account Schedule attached (as may be amended in accordance with the Agreement) as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on September 19, 2005.

Sherman Acquisition LLC

By _____

Print Name _____

Title _____

EXHIBIT

A





**EXHIBIT B**

**PROVIDIAN** *Financial*

R01-9152-0
3053

## PROVIDIAN NATIONAL BANK VISA® AND MASTERCARD® ACCOUNT AGREEMENT

Please review this document and keep it with your other important papers. This Account Agreement contains the terms that govern your Providian National Bank VISA or MasterCard Account (the "Account"). The Account allows you to make purchases by using your VISA or MasterCard credit card (the "Card") wherever it is honored and to get cash advances from us or any other participating financial institution and from Automated Teller Machines, Convenience checks may also be provided to you as an additional way to use the Account. In this Agreement, "you" and "your" mean each person for whom we have opened a credit card Account. "We," "our," "ours," and "us" mean Providian National Bank, or its assignees, as listed on your billing statement. The Account may be used only for personal, family, household, and charitable purposes, and not for any business or commercial purpose. Any use of the Account shall constitute acceptance of the terms of this Agreement. You and we agree as follows:

**Payments.** You will receive a monthly statement showing your outstanding balance. Payment on this Account is required in U.S. dollars (checks must be payable at a U.S. office of the bank the check is drawn on) for at least the payment due as shown on your statement by the payment due date in accordance with payment instructions on your monthly statement. The back of your monthly statement indicates the rules we follow when we post payments to your Account. Convenience checks and other checks we may issue to you may not be used to make payments on your Account or to make payments on any other Account you have with us or our affiliates. The payment due will be 3% of the new balance shown on your statement plus the amount of any past due payment, and may include the amount by which the new balance exceeds your credit line. However, the payment due will not be less than $15 (unless your new balance is less than $15, in which case the payment due will be the amount of the new balance). If your Account is past due or above the credit line, we may require a higher minimum payment, but we will notify you before doing so. If your payment is more than the payment due, it will be treated as a single payment and none of it will be applied to future payments due. We may accept late or partial payments, or payments marked "paid in full" or marked with other restrictions, without waiving our right to collect all amounts owing under this Agreement.

**Finance Charges.** Finance charges begin to accrue on a debit when it is included in one of your daily balances, and continue to accrue until your balance is reduced by a payment or credit. Your Account has two daily balances: the Purchase Balance (which consists of purchases you make with your Card and fees, other than cash advance transaction fees, charged to your Account, including fees for optional services) and the Cash Advance Balance, which consists of all cash advances and cash advance transaction fees. Any payment amount we receive that exceeds the finance charges and fees then due will ordinarily be applied first to the Balance with the lower ANNUAL PERCENTAGE RATE (APR) until that Balance is zero, and then to the remaining Balance. We reserve the right to apply payments differently without further notice. The Purchase and Cash Advance Balances are increased by payment of any purchase or cash advance. Fees included in your Purchase Balance are included as of the date made. Fees included in your Purchase Balance as of the date posted. Purchases are included in your Purchase Balance as of the date made, and by credits as of the date posted. Purchases are included in your Purchase Balance through financial institutions and through Automated Teller Machines are of the date made; funds advances are included in your Cash Advance Balance as follows: cash advances from other financial institutions and through Automated Teller Machines as of the date made; cash advances obtained electronically transmitted, as of the date transmitted; cash advance checks made payable to you that are identified as cashier's checks, which we mail to you at your request, as of seven days after the date we print on the check; all other checks (including any convenience checks, as of the date presented to us). Cash advance transaction fees are included in the Cash Advance Balance as of the transaction date. Other cash advances included in your Purchase or Cash Advance Balances as of the date posted. Finance charges are added to your Purchase and Cash Advance Balances each day and are first posted on the last day of the billing cycle. There is no period within which credit extended may be repaid without incurring a finance charge.

To figure the daily finance charge for purchases and the daily finance charge for cash advances, we start with your previous day's Purchase and Cash Advance Balance, add all debits and subtract all credits for the current day (to the applicable Balance [as explained in the paragraph above], and multiply the net amount by the applicable daily periodic rate (see following paragraphs). The finance charge for purchases is then added to and included in that day's Purchase Balance, and the finance charge for cash advances is then added to and included in that day's Cash Advance Balance. We treat a credit balance of zero or less as zero. We determine the total finance charges on your Balances for the billing cycle by adding together the finance charge for purchases for each day within the billing cycle and the finance charge for cash advances for each day within the billing cycle. In calculating finance charges, an adjustment will be made for any transaction or payment that would have affected the finance charge calculation in a prior cycle if it had been posted in that cycle. The applicable daily periodic rate for such a transaction will be the rate in effect for the current billing cycle rather than the rate in effect on the date of the transaction.

The term "Prime Rate" as used in this Agreement means the prime rate published in The Wall Street Journal on the first business day of the previous calendar month. Any increase or decrease in the APR will take effect on the first day of your billing cycle and may result in a slight increase or decrease in the amount of your minimum payment.

The ANNUAL PERCENTAGE RATE for purchases will vary and may be adjusted each billing cycle up to 10.99% above Prime Rate. Using this formula, the APR for purchases in the April 2000 billing cycle is 18.50%, corresponding to a daily periodic rate of 0.0548%, and your APR for purchases will not go below 19.95%.

The ANNUAL PERCENTAGE RATE for cash advances will vary and may be adjusted each billing cycle up to 12.99% above Prime Rate. Using this formula, the APR for cash advances in the April 2000 billing cycle is 21.99%, corresponding to a daily periodic rate of 0.0602%, and your APR for cash advances will not go below 21.99%.

To determine the average daily balance shown on your statement for purchases, we add each day's Purchase Balance (including daily finance charges) in the billing cycle and divide by the number of days in the billing cycle. To determine the average daily balance shown on your statement for cash advances, we add each day's Cash Advance Balance (including daily finance charges) in the billing cycle and divide by the number of days in the billing cycle. You can multiply each of these average daily balances by the number of days in the billing cycle and by the applicable daily periodic rate to obtain subtotals, and then add the two subtotals together to determine the total amount of finance charges on your balances for the billing cycle. If a cash advance transaction fee, credit line increase fee, or Express Card processing fee is charged (see Fees section), those amounts are then FINANCE CHARGES.

**Fees.** An membership fee of $37.95 will be charged to your Account each month. If you want to add an additional Card to your Account for an authorized user, a fee of $20 for each additional Card will be charged to your Account. This fee will be charged to your Account when the additional Card is issued and every 12 months thereafter for as long as each additional Card is outstanding. If you request and use our Express Card Service, a one-time fee of $19.95, which is a FINANCE CHARGE, will be charged to your Account. In some cases, express processing may not be available. We may charge your Account a $29 fee each time you ask us to replace each returned payment; each check you with on your Account that we return unpaid; each stop-payment order or renewal of such an order; each billing cycle within which your Account is delinquent (late charge); and each billing cycle within which your Account exceeds your credit line even if your Account is deleted. If you request copies of billing statements that were sent you more than two months earlier, we may charge a handling fee of $2 for each such copy. A cash advance fee of 3% (minimum $5), which is a FINANCE CHARGE, may be charged for each cash advance transaction made on your Account. For some credit line increases, you may be charged a fee, which is a FINANCE CHARGE, the amount of which will be disclosed to you before you accept the line increase offer. If you request that we make a one-time automatic payment from your personal checking account, we may charge your Account a fee of $4.95 for each such request. This fee is a FINANCE CHARGE, and it will apply whether or not funds are available in your personal checking account to make the payment.

**Default.** You will be in default if any information you provided us proves to be incomplete or untrue; if you do not comply with any part of this Agreement; upon your death, bankruptcy, or insolvency; if you do not pay any other debts when due; if a bankruptcy petition is filed by or against you; or if we believe in good faith that you may not pay or perform your obligations under this Agreement. If you are in default, we may, without further demand on you, cancel your credit privileges, declare your Account balance immediately due and payable, and use any remedy we may have. In the event of your default, the outstanding balance on your Account will continue to accrue interest at the APR(s) disclosed in the Finance Charges section of this Agreement, even if we have filed suit to collect the amount you owe.

**Credit Line.** Your credit line and cash advance line are disclosed when you open your Account and on your statement each month. Your cash advance line is limited to a portion of your credit line. We may increase or decrease your credit line and/or your cash advance line based on information we obtained from you or your credit records. Your available credit for purchases is normally the difference between your credit line and your Account balance (including transactions made or authorized but not yet posted). Your available credit for a cash advance is normally the difference between your cash advance line and your Cash Advance Balance or the difference between your credit line and your Account balance, whichever is less. If you anticipate a large payment, we may limit your available credit while we confirm that the check will clear. For certain transactions, available credit may be less. You will not use your Account for, and we may refuse to honor, any transaction that would cause you to exceed your available credit or your available credit for cash advances. Your credit line may be reduced if you attempt to go over your cash advance credit line.

**Promise to Pay.** You promise to pay us when due all amounts borrowed when you or someone else uses your Account (even if the amount charged exceeds your permission), all other transactions and charges to your Account, and all collection costs we incur including, but not limited to, reasonable attorney's fees and court costs. (If you win the suit, we will pay your reasonable attorney's fees and court costs.)

**Changes.** After we provide you any notice required by law, we may change any part of this Agreement and add or remove any terms, conditions, or requirements. If a change is made to the Finance Charges section of this Agreement, the new finance charge calculation will apply to your entire Account balance from the effective date of the change. Changes will apply to balances that include items posted to your Account before the stated the change, and will apply whether or not you continue to use the Account.

**Foreign Exchange/Currency Conversion.** If you use your Card for transactions in a currency other than U.S. dollars, the transactions will be converted to U.S. dollars, generally using either a (i) government-mandated rate or (ii) wholesale market rate in effect the day before the transaction is processed, increased by 1%. If a credit is subsequently given for a transaction, it will be decreased by the same percentage. The currency conversion rate used on the conversion date may differ from the rate in effect on the date you used your Card. You agree to accept the converted amount in U.S. dollars.

**The Card; Cancellation.** You may cancel your credit privileges at any time by notifying us in writing and destroying the Card(s). Upon the Card expiration at the end of the month shown on it, we reserve the right not to renew the Card. We may cancel the Card and your credit privileges at any time after 30 days notice to you, or without notice if permitted by law. If your Card is cancelled or not renewed, finance charges and other fees will continue to be assessed, payments will continue to be due, and all other applicable provisions of this Agreement will remain in effect. If you terminate your credit privileges, or if we cancel or do not renew the Card, you may no longer write checks on your Account, and you should destroy any unused checks we may have issued to you.

5/00 — (Continued on reverse) — 06019

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois Limited )
Liability Company )    Case No.
                                              )
                    Plaintiff                 )
                                              )
         v.                                   )
BARBARA J KING                                )
                                              )
                    Defendant(s).             )
                                              )
                                              )
                                              )

AFFIDAVIT OF CLAIM

I, Eileen M. Mahon, an employee of Resurgence Financial, LLC, being first duly sworn upon my oath depose and state as follows:

1.      I am over the age of 21, under no legal disability, and if called and sworn as a witness in this cause, would testify that I have personal knowledge of the facts set forth in this petition.

2.      I am employed by Resurgence Financial, LLC, an Illinois Limited Liability Company ("Resurgence").

3.      Resurgence is proceeding in this matter on an assignment from Sherman Acquisition LLC.

4.      I am familiar with the account of BARBARA J KING with Resurgence.

5.      I am familiar with the computer records of Resurgence and how to search the records of Resurgence to determine the status of accounts with our company.

6.      I have the authority to review the computer records of Resurgence.

7.      I have reviewed the records of Resurgence, which reflect that BARBARA J KING was issued a credit card by Providian Financial Corp, with an account number of ███████████1808 and that the issuer, Providian Financial Corp, charged off said account on December 31, 2003, as a result of Defendant defaulting in making payments pursuant to the Cardmember Agreement.

8.      I have reviewed the computer records of Resurgence. There is a balance due to Resurgence on this account in the amount of $6,468.72 and Resurgence has not received payment.

FURTHER, THE AFFIANT SAYETH NAUGHT.

*"OFFICIAL SEAL"*
NOEL DAGUIO
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 08/04/10

*Eileen M. Mahon*
RESURGENCE FINANCIAL, LLC
EILEEN M. MAHON

SUBSCRIBED AND SWORN TO
before me this 27th day of February, 2008

_____
NOTARY PUBLIC



R0051320

UNITED STATES OF AMERICA

STATE OF ILLINOIS                                                    COUNTY OF COOK

FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois
Limited Liability Company,                          CASE NUMBER

                    Plaintiff

            v.

BARBARA J KING                                      FILE STAMP HERE

                    Defendant(s)

### AFFIDAVIT TO MILITARY SERVICE

Resurgence Financial, LLC, by its duly authorized agent, being first duly sworn upon my oath depose and states:

With respect to (each) defendant, BARBARA J KING

☐    the Defendant is

☒    the Defendant is not

☐    I am unable to determine whether the Defendant is

in the military service of the United States of America.

This affidavit is based on these facts:  I searched on the Department of Defense website:  www.dmdc.osd.mil/scra/owa/home
and the report indicated that the Defendant (is) (is not) on active military duty;

"OFFICIAL SEAL"
NOEL D'AGUIO
COMMISSION EXPIRES 08/04/10

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil
Procedure, the above signed certifies that the statements set forth in this instrument
are true and correct, except as to matters therein stated to be on the information and
belief and as to such matters the above signed certifies as aforesaid that s/he believes
the same to be true.

Sworn and Subscribed before me
this 20th day of February, 2008

NOTARY PUBLIC

                                                    EILEEN M. MAHON

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
#41776