**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BARBARA KING, individually and on behalf of the class defined herein, | ) ) ) ) |
| Plaintiff, | ) Case No. 08 CV 3306 ) Judge Amy J. St. Eve |
| vs. | ) Magistrate Judge Cox ) |
| RESURGENCE FINANCIAL, LLC, | ) ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S PRELIMINARY MOTION FOR CLASS CERTIFICATION**

Plaintiff has requested that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendant Resurgence Financial, LLC ("Resurgence"). This memorandum is submitted in support of that motion.

**I.      NATURE OF THE CASE**

This action seeks redress for the conduct of defendant, a debt buyer, in filing collection actions on purported debts to which it did not have lawful title. In order to protect Illinois residents against being sued for the same debts twice, the Illinois Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as "collection agencies." This makes applicable the licensing requirements of the ICAA and the special assignment requirements in ICAA §8b, 225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment. Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257; 698 N.E.2d 702 (4th Dist. 1998).

Section 8b of the ICAA provides:

>    **Sec. 8b. An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**

1

> **(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**
>
> > **( i) the effective date of the assignment; and**
> >
> > **(ii) the consideration for the assignment.**
>
> **(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**
>
> **(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**
>
> **(d) No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**
>
> **(e) No litigation shall commence in the name of the licensee as plaintiff unless: ( i) there is an assignment of the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

The assignment must be attached to the complaint. Candice Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996). In addition, the assignee is required "in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title...." 735 ILCS 5/2-403(a).

Defendant Resurgence, a debt buyer regulated by the ICAA since January 1, 2008, systematically files collection lawsuits without compliance with ICAA §8b and, therefore, without valid claims. More than 500 such lawsuits have been filed.

In this action, plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f, and ICAA §9. Finally, plaintiff alleges that the practices described above constitutes both unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

## II.     THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the:

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254 (7th Cir. 1994). The standard is an objective one – whether the plaintiff or any class member was misled is not an element of a cause of action. "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 392 (D. Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to**

> **remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir.1997); Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D. N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D.Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr. N.D. N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D. Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666 (7th Cir. 2001); Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers...." FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them...." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." Cacace v. Lucas, 775 F. Supp. at 505. Accord, Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir.2000).

### III.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated

in <u>Eshaghi v. Hanley Dawson Cadillac Co.</u>, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.**  (574 N.E.2d at 764, 766).

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. <u>Shea v. Codilis</u>, 99 C 57, 2000 WL 336537, 2000 U.S. Dist. LEXIS 4131 (N.D. Ill., Mar. 27, 2000); <u>Roe v. Publishers Clearing House</u>, 98 C 330, 1999 WL 966977, 1999 U.S. Dist. LEXIS 16249 (N.D. Ill., Sept. 30, 1999); <u>Vines v. Sands</u>, 188 F.R.D. 302 (N.D. Ill. 1999); <u>Nielsen v. Dickerson</u>, 98 C 5909, 1999 WL 350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill., May 19, 1999); <u>Sledge v. Sands</u>,182 F.R.D. 255 (N.D. Ill. 1998); <u>Shaver v. Trauner</u>, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill., July 31, 1998); <u>Davis v. Suran</u>, 98 C 656, 1998 WL 474105, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill., July 31, 1998); <u>Francisco v. Doctors & Merchants Credit Service, Inc.</u>, 98 C 716, 1998 WL 474107, 1998 U.S. Dist. LEXIS 12234 (N.D. Ill., July 29, 1998); <u>Keele v. Wexler & Wexler</u>, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., Mar. 18, 1996), <u>aff'd</u>, 149 F.3d 589 (7th Cir. 1998); <u>Wells v. McDonough</u>, 97 C 3288, 1998 WL 160876, 1998 U.S. Dist. LEXIS 4441 (N.D. Ill., Mar. 23, 1998); <u>Miller v. Wexler & Wexler</u>, 97 C 6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill., Feb. 5, 1998); <u>Wilborn v. Dun & Bradstreet</u>, 180 F.R.D. 347 (N.D. Ill. 1998); <u>Arango v. GC Services LP</u>, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); <u>Avila v. Van Ru Credit Corp.</u>, 94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), <u>aff'd</u>, <u>Avila v. Rubin</u>, <u>supra</u>, 84 F.3d 222; <u>Carr v. Trans Union Corp.</u>, C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA

class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill. 1995) (similar); Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV. THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A. Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive...." Riordan, 113 F.R.D. at 62. Where the class numbers at least 40, joinder is generally considered impracticable. Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); Riordan, 113 F.R.D. 60 (10-29 sufficient); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968) (25 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70 sufficient). It is not necessary that the precise number of class members be known. "A class action may proceed upon estimates as to the size of the proposed class." In re Alcoholic Beverages Litigation, 95 F.R.D. 321 (E.D. N.Y. 1982); Lewis v. Gross, 663 F. Supp. 1164, 1169 (E.D. N.Y. 1986).

The court may "make common sense assumptions in order to find support for

numerosity." Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination.... Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 Newberg on Class Actions (3d ed. 1992), §7.22.A.

For example, it is reasonable to infer that the number of class members exceeds the minimum necessary from the use by a large collection agency of a form letter. Swiggett v. Watson, 441 F. Supp. 254, 256 (D. Del. 1977) (in action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, fact that Department of Motor Vehicles issued printed form for such transfer in and of itself sufficient to show that numerosity requirement was satisfied); Westcott v. Califano, 460 F. Supp. 737, 744 (D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of); Carr, 1995 U.S. Dist. LEXIS 567 (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers in which court inferred numerosity from the use of form letters); Colbert, 1995 U.S. Dist. LEXIS 578 (same); Keele, 1996 U.S. Dist. LEXIS 3253.

Here, the volume of cases filed by defendant Resurgence (Appendix A), coupled with its practice of omitting an assignment that complies with ICAA §8b, makes it reasonable to infer numerosity. Defendant has filed at least 500 lawsuits without attaching an assignment.

**B.    Rules 23(a)(2) and 23(b)(3) – Predominance of common questions of law or fact**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual

link between all class members and the defendants for which the law provides a remedy. Halverson v. Convenient Food Mart, Inc., 69 F.R.D. 331, 334 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement ... is usually met." Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D. Ill. 1984); accord, Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988); Carroll v. United Compucred Collections, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D. Tenn., Nov. 15, 2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn., Mar. 31, 2003), aff'd, 399 F.3d 620 (6th Cir. 2005); Wahl v. Midland Credit Mgmt., 06 C 1708, 2007 U.S. Dist. LEXIS 39626, *14-15 (N.D. Ill., May 30, 2007); Smith v. Nike Retail Services, Inc., 234 F.R.D. 648, 659 (N.D. Ill. 2006). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. Halverson, supra, 69 F.R.D. at 334-336; Haroco v. American Nat'l Bank, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); Kleiner v. First Nat'l Bank, 97 F.R.D. 683, 692 (N.D. Ga. 1983) (same); Heastie v. Community Bank, 125 F.R.D. 669, 675 (N.D. Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights); Carroll v. United Compucred Collections, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *47-48 (M.D. Tenn., Nov. 15, 2002) (collection practices).

In this case, the "common nucleus of operative fact," Halverson, 69 F.R.D. at 335, is that defendant filed lawsuits against the members of the class without attaching an assignment that complies with ICAA §8b. This conduct gives rise to the predominant common question of whether the statements complained of violate the FDCPA, ICAA and ICFA.

The only individual issue is the identification of the class members, a matter capable of ministerial determination from defendant's records, the records of its attorneys, or court files. Questions readily answerable from defendant's files do not present an obstacle to class certification. Heastie v. Community Bank, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues

predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

In any event, the Seventh Circuit has held that the need for "separate proceedings of some character ... to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement ... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." Id.

### C.   Rule 23(a)(3) – Typicality

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the plaintiff.

### D.   Rule 23(a)(4) – Adequacy of representation

The rule also requires that the named plaintiff provide fair and adequate protection

for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Appendix B, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both plaintiff and the class members seek money damages as the result of defendant's unlawful collection practices. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class.

### E. Rule 23(b)(3) – Class action is superior to other available methods of resolving this controversy

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. Scholes, 143 F.R.D. at 189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D. Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "...inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor. The vast majority of debtors are undoubtedly unaware that their rights are being violated. In addition, persons from whom defendant is attempting

to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

Lake v. First Nationwide Bank, 156 F.R.D. 615, 628-629 (E.D. Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. Zanni, 119 F.R.D. 32.

## V.    CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

        Respectfully submitted,

        <u>s/ Daniel A. Edelman</u>
        Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify that on June 16, 2008, the foregoing document was filed electronically using the Court's CM/ECF system. A copy of the foregoing document was served on the following via hand delivery:

RESURGENCE FINANCIAL, LLC
c/o Nathan M. Grossman, Registered Agent
20 S. Clark Street, Suite 1650
Chicago, IL 60603

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)