**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BARBARA KING, <br> individually and on behalf of the class <br> defined herein, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 08 CV 3306 <br> Judge Amy J. St. Eve |
| vs. | ) <br> ) | Magistrate Judge Cox |
| RESURGENCE FINANCIAL, LLC, | ) <br> ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE CLAIMS**

**INTRODUCTION**

1.      This action seeks redress for the conduct of defendant, a debt buyer, in filing collection actions on purported debts to which it did not have lawful title.

2.      There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

3.      There are multiple reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt.  Smith v. Mallick, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result).  See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D. Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

1

4.    In Wood v. M&J Recovery LLC, CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D. N.Y., Apr. 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved.  Shekinah alleged that it sold a portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt. Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

5.    In Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C., IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D. Ind., Apr. 25, 2001), later opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

6.    An article that appeared in the trade press shortly before the extension of the Illinois Collection Agency Act to debt buyers stated:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent....

Corinna C. Petry, Do Your Homework; Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises, Collections & Credit Risk, March 2007, pg. 24, Vol. 12, No. 3.  The article quoted an officer of an Illinois debt buyer who had purchased, or ostensibly purchased, bad paper.

7.    Courts have also dismissed numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts.  In re Foreclosure Cases, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio, Oct. 31, 2007); In re Foreclosure Cases, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D.

Ohio, Nov. 27, 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio 2007); In re Foreclosure Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D. Ohio, Dec. 27, 2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D. Ohio, Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214 (S.D. Ohio, Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215 (S.D. Ohio, Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio 1282; 2008 Ohio App. LEXIS 1103 (Ohio App., Mar. 20, 2008) (judgment for plaintiff reversed because it failed to introduce assignment or establish that it was the holder of the note and mortgage); Deutsche Bank National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U; 18 Misc. 3d 1115A; 2008 N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct., Jan. 14, 2008); HSBC Bank USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14 Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., Jan. 30, 2008); HSBC Bank USA, N.A. v. Cherry, 21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y. Misc. LEXIS 8279; 239 N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsche Bank National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y., Sup. Ct. 2007).

       8.     Debt buyer American Acceptance filed a lawsuit alleging that a broker of charged-off debts sold it debts to which it did not have title. American Acceptance Co. v. Goldberg, 2:08cv9 (N.D. Ind.). Another debt buyer, Hudson & Keyse, filed suit alleging that the same debt broker obtained information about consumer debts owned by Hudson & Keyse and used the information to try to collect the debts for its own account, even though it didn't own them. Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D. Fla., filed Nov. 5, 2007). A similar suit, alleging that the broker resold accounts it did not own, was filed by Old National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D. Fla., Jan. 24, 2008). The same debt broker is accused in another complaint of selling 6,521 accounts totaling about $40 million face value which it did not own. RMB Holdings, LLC v.

Goldberg & Associates, LLC, 3:07-cv-00406 (E.D. Tenn., filed Oct. 29, 2007). Other debt

buyers have voiced similar complaints. "Florida Broker Faces Multiple Lawsuits," Collections &

Credit Risk, April 2008, p. 8.

   9. In a related abuse, debt buyers would "purchase" debts with minimal

information about the debtor and then try to "collect" them from anyone with a similar name. In

2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in

Illinois. The following is from a press release issued by the FTC in connection with that case.

> ... In papers filed with the court, the agency charged that as much as 80 percent of
> the money CAMCO collects comes from consumers who never owed the original
> debt in the first place. Many consumers pay the money to get CAMCO to stop
> threatening and harassing them, their families, their friends, and their co-workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no
> documentation about the original debt and in many cases no Social Security
> Number for the original debtor. CAMCO makes efforts to find people with the
> same name in the same geographic area and tries to collect the debt from them –
> whether or not they are the actual debtor. In papers filed with the court, the FTC
> alleges that CAMCO agents told consumers – even consumers who never owed the
> money – that they were legally obligated to pay. They told consumers that if they
> did not pay, CAMCO could have them arrested and jailed, seize their property,
> garnish their wages, and ruin their credit. All of those threats were false, according
> to the FTC.... (http://www.ftc.gov/opa/2004/12/camco.htm).

   10. In order to protect Illinois residents against this sort of abuse, the Illinois

Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as

"collection agencies." This makes applicable the special assignment requirements in ICAA §8b,

225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required

to but did not have such an assignment does not have a valid claim and that the defendant in such

a case is entitled to judgment. Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257;

698 N.E.2d 702 (4th Dist. 1998).

   11. Section 8b of the ICAA provides:

  **Sec. 8b. An account may be assigned to a collection agency for collection
with title passing to the collection agency to enable collection of the account in
the agency's name as assignee for the creditor provided:**

   **(a) The assignment is manifested by a written agreement, separate
from and in addition to any document intended for the purpose of**

**listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**

**(i) the effective date of the assignment; and**

**(ii) the consideration for the assignment.**

**(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**

**(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**

**(d) No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**

**(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

12.    Furthermore, the assignment must be attached to the complaint. <u>Candice Co. v. Ricketts</u>, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

13.    Finally, the assignee is required "in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title...." 735 ILCS 5/2-403(a).

14.    Defendant Resurgence Financial, LLC, a debt buyer regulated by the ICAA, systematically files collection lawsuits without compliance with ICAA §8b and, therefore, without valid claims.

15.    On information and belief, defendant Resurgence Financial, LLC, filed suit against plaintiff on a debt which it did not own.

16.    In this action, plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f,  and ICAA §9.

5

## VENUE AND JURISDICTION

17.    This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

18.    Venue and personal jurisdiction in this District are proper because:

a.    Defendant's collection communications and activities impacted plaintiff within this District;

b.    Defendant does business and is located within this District.

## PARTIES

19.    Plaintiff is an individual who resides in the Northern District of Illinois.

20.    Defendant Resurgence Financial, LLC is a limited liability company organized under Illinois law with offices at 4100 Commercial Avenue, Northbrook, Illinois 60062.

21.    Defendant Resurgence Financial, LLC does business in Illinois.  Its registered agent and office are Nathan M. Grossman, 20 S. Clark, Suite 1650, Chicago, IL 60603.

22.    Defendant Resurgence Financial, LLC is engaged in the business of purchasing charged-off consumer debts and enforcing the debts against the consumers.  Such debts are often referred to as "zombie debts."  Eileen Ambrose, "Zombie Debt; Debt Can Come Back to Haunt You Years Later," The Baltimore Sun, May 6, 2007, p. 1C ("Zombie debt is just that - an old debt that won't die off. It may be passed from one debt buyer to another, for years, until one day consumers are startled to find a collector demanding payment.").

23.    Defendant Resurgence Financial, LLC pays an average of less than ten cents on the dollar for the debts it purchases.

24.    Defendant Resurgence Financial, LLC regularly uses the mails and telephones to conduct its business.

25.    Defendant Resurgence Financial, LLC has been the plaintiff in more than 500 Illinois lawsuits filed since January 1, 2008 and seeking to collect consumer debts.

26.     Because the purported obligations were originally owed to other entities and were charged off prior to purchase, Resurgence Financial, LLC is a "debt collector" as defined in the FDCPA.

27.     Resurgence Financial, LLC is also a "collection agency" as defined in the ICAA.

### FACTS RELATING TO PLAINTIFF

28.     On or about April 14, 2008, Resurgence Financial, LLC filed suit against plaintiff Barbara King in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.  Resurgence Financial, LLC claimed to have purchased the debt, which was alleged to be a Providian credit card charged off December 31, 2003.

29.     The complaint did not attach any assignment that complied with §8b of the Illinois Collection Agency Act.  A copy of the complaint and exhibits are attached as Appendix A hereto.

30.     On information and belief, defendant did not have an assignment that complied with §8b of the Collection Agency Act.

31.     On June 23, 2008, Resurgence Financial, LLC was granted leave to file an amended complaint.  Resurgence Financial, LLC was still unable to show a proper chain of title or produce a document that complies with the ICAA.  A copy of the amended complaint and exhibits is are attached as Appendix B.

32.     On July 28, 2008, Resurgence Financial, LLC nonsuited the case against Barbara King.

33.     On information and belief, defendant Resurgence Financial, LLC, filed suit against plaintiff on a debt which it did not own.

34.     Defendant therefore did not have any sort of valid claim and knew or should have known that it did not have a valid claim.

7

## FACTS – GENERAL

35.    Defendant Resurgence Financial, LLC regularly files lawsuits on debts it claims to have purchased without having an assignment that complies with §8b of the Collection Agency Act and, therefore, without a valid claim.

36.    On information and belief, defendant Resurgence Financial, LLC regularly files suit on debts which it does not own.

37.    Defendant knows or should know it has no valid claim, but files suit anyway because consumers are unlikely to realize the fact.

38.    On information and belief, based on a computer search of court records, defendant has filed over 500 such lawsuits.

## CLASS ALLEGATIONS

39.    Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).  The class consists of (a) all individuals (b) against whom defendant Resurgence Financial, LLC filed a collection lawsuit (c) in Illinois (d) subsequent to January 1, 2008, (e) without attaching to the complaint an assignment that complied with §8b of the ICAA.

40.    The class is so numerous that joinder of all members is not practicable.

41.    On information and belief, there are at least 40 individuals against whom defendant Resurgence Financial, LLC filed a collection lawsuit in Illinois subsequent to January 1, 2008, without attaching to the complaint an assignment that complied with §8b of the ICAA.

42.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

a.    Whether defendant engages in a practice of filing lawsuits without attaching to the complaint an assignment that complied with §8b of the ICAA;

b.    Whether such lawsuits are therefore subject to a defense of which defendant knows or should know about;

8

c.      Whether such practice is an unfair or deceptive;

d.      Whether defendant violates the ICAA.

43.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

44.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

45.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.      Individual actions are not economically feasible;

b.      Members of the class are likely to be unaware of their rights;

c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

### COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

46.    Plaintiff incorporates paragraphs 1-45.

47.    The filing and prosecution of collection lawsuits notwithstanding a known defense, in the hope that the consumer will not raise the defense, is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §1692f.

48.    Since Kimber v. Federal Financial Corp., 668 F. Supp. 1480, 1488 (M.D. Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the hope that the consumer will not realize it exists and will default or pay has been a violation of the FDCPA.

49.    In addition, by filing suit defendant misrepresents that it has proper title to the debt and the right to file suit, when this is not true.

50.    Section 1692e provides:

**§ 1692e.       False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of--**

**(A)    the character, amount, or legal status of any debt; . . .**

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

51.    Section 1692f provides:

**§ 1692f.    Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

a.    Statutory damages;

b.    Actual damages;

c.    Attorney's fees, litigation expenses and costs of suit;

d.    Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

52.    Plaintiff incorporates paragraphs 1-45.

53.    Defendant is a "collection agency" as defined in the ICAA.

54.    Section 425/3(d), as amended effective January 1, 2008, brings debt buyers within its purview by providing that "[a] person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it ... [b]uys accounts, bills or other indebtedness and engages in collecting the same."

55.    Previously coverage was limited to a person who "[b]uys accounts, bills or

other indebtedness with recourse and engages in collecting the same."

56.    By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as the defendant who buy charged-off debts for their own account.

57.    Defendant violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein.

58.    Defendant negligently or knowingly violated the following provisions of 225 ILCS 425/9:

> **. . .(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.  . . .**

59.    A private right of action exists for violation of the ICAA.  <u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

60.    Plaintiff and the members of the class were damaged as a result.

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and the class and against defendant:

a.    Compensatory, punitive and nominal damages, as appropriate;

b.    Costs;

c.    Such other and further relief as is appropriate.

## <u>COUNT III – ILLINOIS CONSUMER FRAUD ACT</u>

61.    Plaintiff incorporates paragraphs 1-45.

62.    Defendant's conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

63.    Defendant engaged in such conduct in the course of trade and commerce.

64.    Defendant engaged in such conduct for the purpose of obtaining money from and injuring the credit of plaintiff and others.

65.    Plaintiff and the members of the class were damaged as a result.

11

66.     The filing of collection lawsuits is regularly picked up and reported by credit bureaus.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

a.     Actual damages;

b.     Punitive damages;

c.     An injunction against further violations;

d.     Attorney's fees, litigation expenses and costs of suit;

e.     Such other or further relief as the Court deems proper.


s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiff demands trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.


<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

<u>**CERTIFICATE OF SERVICE**</u>

I, Daniel A. Edelman, hereby certify that on July 30, 2008, I caused the foregoing **First Amended Complaint – Class Action** to be filed electronically using the Court's CM/ECF system, which will send notice to the following:

David M. Schultz (<u>dschultz@hinshawlaw.com</u>)
Todd P. Stelter (<u>tstelter@hinshawlaw.com</u>)
Hinshaw & Culbertson, LLP
222 North LaSalle Street
Suite 300
Chicago, IL  60601-1081
(312) 704-3000
(312) 704-3001 (FAX)

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A

R0051320

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois ) **08 M1 121085**
Limited Liability Company )
) Case No.
Plaintiff ) Amount Claimed: $6,468.72
)
) Return Date:   APR 1 4 2008
v. )
)
BARBARA J KING )
Defendant(s). )
)
)
)
)

### VERIFIED COMPLAINT AT LAW

RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company ("Plaintiff"), by and through one of

its staff attorneys, complains of BARBARA J KING ("Defendant"), as follows:

1.      Pursuant to 735 ILCS 5/2-403, Plaintiff is proceeding in this cause as the Assignee of Providian Financial Corp

("Providian Financial Corp."), as set forth in the Bill of Sale attached hereto, made a part hereof and marked as Exhibit

"A".

2.      Providian Financial Corp  and Defendant entered into a Cardmember Agreement ("Agreement"), wherein

Providian Financial Corp  issued a credit card account number ███████1808 to Defendant and Defendant agreed

to pay all amounts charged by the use if the card.   A copy of the Agreement containing the terms and conditions

governing the use of the credit card is attached hereto, made a part hereof and marked as Exhibit "B".

3.      Defendant resides in the State of Illinois.

4.      Thereafter, Defendant incurred charges by use of the credit card.

5.      As set forth in the Affidavit of Plaintiff, attached hereto, made a part hereof and marked as Exhibit "C", there

is now due and owing from Defendant to Plaintiff the sum of $6,468.72, of which no part has been paid, although duly

demanded.

WHEREFORE, Plaintiff, Resurgence Financial, LLC, an Illinois Limited Liability Company, demands a judgment against the Defendant(s) BARBARA J KING, in the sum of $6,468.72, plus court costs.

Respectfully Submitted,

RESURGENCE FINANCIAL, LLC,
an Illinois Limited Liability Company,
Plaintiff herein,

By One of Its Staff Attorneys

VERIFICATION                John V. Kalantzis, Esq.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

RESURGENCE FINANCIAL, LLC
By One of Its Attorneys

John V Kalantzis, Esq.

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
Firm No. 41776

Bill of Sale

Sherman Acquisition LLC, for value received and in accordance with the terms of the Purchase and Sale Agreement by and between Resurgence Financial, LLC and SHERMAN ACQUISITION LLC ("Seller"), dated as of September 19, 2005 (the "Agreement"), does hereby sell, assign and transfer to Purchaser, its successors and assigns, all right, title and interest in and to the Accounts listed in the Account Schedule attached (as may be amended in accordance with the Agreement) as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on September 19, 2005.

Sherman Acquisition LLC

By _____

Print Name _____

Title _____

EXHIBIT

A

EXHIBIT
B






PROVIDIAN
*Financial*

R01-9152-0
3053

## PROVIDIAN NATIONAL BANK VISA® AND MASTERCARD® ACCOUNT AGREEMENT

Please review this document and keep it with your other important papers. This Account Agreement contains the terms that govern your Providian National Bank VISA or MasterCard Account (the "Account"). The Account allows you to make purchases by using your VISA or MasterCard credit card (the "Card") wherever it is honored and to get cash advances from us or any other participating financial institution and from Automated Teller Machines, Convenience checks may also be provided to you as an additional way to use the Account. In this Agreement, "you" and "your" mean each person for whom we have opened a credit card Account. "We", "our", "ours," and "us" mean Providian National Bank, or its assignees, as listed on your billing statement. The Account may be used only for personal, family, household, and charitable purposes, and not for any business or commercial purpose. Any use of the Account shall constitute acceptance of the terms of this Agreement. You and we agree as follows:

**Payments.** You will receive a monthly statement showing your outstanding balance. Payment on this Account is required in U.S. dollars (checks must be payable at a U.S. office of the bank the check is drawn on) for at least the payment due as shown on your statement by the payment due date in accordance with payment instructions on your monthly statement. The back of your monthly statement includes the rules we follow when we post payments to your Account. Convenience checks and other checks we may issue to you must be made to us...

**Finance Charges.** Finance charges begin to accrue on a debit when it is included in one of your daily balances and continue to accrue until your balance is reduced by a payment or credit...

**Fees.** A membership fee of $37.95 will be charged to your Account each year...

**Default.** You will be in default if any information you provided us proves to be incomplete or untrue...

**Credit Line.** Your credit line and cash advance line are disclosed when you open your Account and on your statement each month...

**Promise to Pay.** You promise to pay us when due all amounts borrowed when you or someone else uses your Account...

**Changes.** After we provide you any notice required by law, we may change any part of this Agreement...

**Foreign Exchange/Currency Conversion.** If you use your Card for transactions in a currency other than U.S. dollars...

**The Card; Cancellation.** You may cancel your credit privileges at any time by notifying us in writing and destroying the Card(s)...

5/00
(Continued on reverse)
0.6015

**Personal Information; Documents.** You will provide us at least 10 days notice if you change your name, home or mailing address, telephone numbers, employment, or income. Upon our request, you will provide us additional financial information. We reserve the right to obtain information from others, including credit reporting agencies, and to provide your address and information about your Account to others. We may also share information with our business affiliates. However, you may write to us at any time instructing us not to share such information with our affiliates. If you do not fulfill your obligations under this Agreement, a negative credit report may reflect on your credit may be submitted to credit reporting agencies.

**Customer Service; Unauthorized Use, Loss, or Theft of Checks or the Card.** Each Card must be signed on receipt. You are responsible for safeguarding the Card, your Personal Identification Number (PIN), which provides access to Automated Teller Machines, and any checks issued to you from them, and for keeping your PIN separate from your Card. If you discover or suspect that the Card, PIN, or any unused checks are lost or stolen, or that there may be an unauthorized transaction on your Account, you will promptly notify us by calling 1-800-711-5818. So we can immediately act to limit losses and liability, you will phone us even though you may also notify us in writing. Your liability for unauthorized use occurring before you notify us is limited to $50. If you report or we suspect unauthorized use of your Account, we may suspend your credit privileges until we resolve the problem to our satisfaction or issue you a new Card. If your Card is lost or stolen, you will promptly destroy all checks that may be in your possession. To improve customer service and security, you agree that your calls may be monitored or recorded.

**Merchant Relations.** We will not, as does it, any person or Automated Teller Machine refuses to honor the Card or accept your checks, or fails to return the Card to you. We have no responsibility for goods and services purchased with the Card, or checks except as required by law. (See Special Rule below.) Certain benefits that are available with the Account are provided by third-party vendors. We are not responsible for the quality, availability, or results of any of the services you choose to use.

**Stop Payment Orders.** If you wish to stop payment on a check, you may send us a stop payment order by writing to us at our address for Customer Service listed on your statement. You can make a stop payment order simply by calling the number listed on your statement. When you make a stop payment order, you must provide your Account number and specific information about the check: the exact amount, the date on the check, the name of the party to whom it was payable, the name of the person who signed it, and the check number. You will be asked to confirm an oral stop payment order in writing. We may disregard your oral order if we do not receive a signed written confirmation within two weeks after the oral order, or if we have not received an adequate description of the item so that payment can be stopped. The order will not be effective if the check was paid by us before we had a reasonable opportunity to act on the order. We may, without liability, disregard a written stop payment order six months after receipt unless it is renewed in writing.

**Standard of Care.** Because this Account involves a credit card and may involve check transactions that are processed through separate national systems before the transactions are consolidated by us, and because not every check and Card slip will list us, the transactions to your Account will be processed electronically without necessarily reviewing every item. Our processing system will call our attention to certain items, which we will examine. We will examine all transactions when you report that your Card or any checks have been lost or stolen. We do not intend ordinarily to examine all items, and we will not be negligent if we do not do so. This rule establishes the standard of ordinary care that we in good faith will exercise in administering your Account. Because of our limited review, and because neither your cancelled checks nor Card transaction slips will be returned to you with the monthly statement, you should be careful to save all checks in your check register or otherwise keep a record of them. You should also save your credit card cash advance and purchase slips. You agree to check your monthly statement against your records promptly and to notify us immediately of any unauthorized transactions or errors.

**Waiver of Certain Rights.** We may delay or waive enforcement of any provision of this Agreement without losing our right to enforce it or any other provision later. You waive the right to presentment, demand, protest, or notice of dishonor, any applicable statute of limitations, and any right you may have to require us to proceed against anyone before we sue against you.

**Applicable Law; Severability; Assignment.** No matter where you live, this Agreement and your Account are governed by federal law and by New Hampshire law. This Agreement is a final expression of the agreement between you and us and may not be contradicted by evidence of any alleged oral agreement. If any provision of this Agreement is held to be invalid or unenforceable, you and we will consider that provision modified to conform to applicable law, and the rest of the provisions in this Agreement will still be enforceable. At any time after we determine in good faith that any proposed or enacted legislation, regulatory action or judicial decision has rendered or may render any material provisions of this Agreement invalid or unenforceable, or impose any increased fee, reporting requirement, or other burden in connection with any such provision or its enforcement, we may, after 30 days notice to you, cancel or modify this Agreement or any part of it. We may transfer or assign our right to all or some of your payments. If state law requires that you receive notice of such an event to protect the purchaser or assignee, we may give you such notice by filing a financing statement with the state's Secretary of State.

**Notices.** Other notices to you shall be effective when deposited in the mail addressed to you at the address shown in our records, unless a longer notice period is specified in this Agreement or by law, which period shall start upon mailing. Notice to us shall be mailed to our address for Customer Service on your statement (or other addresses we may specify) and shall be effective when we receive it.

**YOUR BILLING RIGHTS — KEEP THIS NOTICE FOR FUTURE USE.** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us in Case of Errors or Questions About Your Bill.* If you think your bill is wrong, or if you need more information about a transaction on your bill, write us, on a separate sheet, at our address listed in the Billing Rights Summary on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following: Your name and Account number — The dollar amount of the suspected error — A description of the error and an explanation, if possible, of why you believe there is an error. If you need more information, describe the item you are not sure about.

*Your Rights and Our Responsibilities After We Receive Your Written Notice.* We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up the missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases.* If you have a problem with the quality of the property or services that you purchased with our credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the property or services. There are two limitations on this right: (a) you must have made the purchase in your home state, or if not within your home state, within 100 miles of your current mailing address; and (b) the purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**REWARDS PROGRAM.** The following Terms and Conditions, along with the Redemption Rules disclosed in the Rewards Brochure ("Brochure"), apply to the Rewards Program ("Program").

*Eligibility.* Participation in the Programs is restricted to individuals who maintain a Providian VISA or MasterCard credit card account ("Account") in good standing. We reserve the right to approve, deny, or revoke membership or not allow redemption of Rewards, as defined below, to any individual for any reason whatsoever.

*Earning of Points.* During the first 12 months your Account is open, you will earn 2 points ("Points") for each $1 of Net Purchases. Thereafter, at the end of each monthly billing cycle, you will earn 1 Point for each $1 of Net Purchases. "Net Purchases" means purchases of goods or services made by you or any authorized user of the Account, minus any returns of refunds, and excluding balance transfers, cash advances, service checks, and access checks. Points do not accrue for interest charges or fees, of any kind, such as late payment fees, annual fees, overlimit fees, and unauthorized charges. Changes made to the above list are at our sole discretion. Point accrual will begin upon your Enrollment Date in the Program. No retroactive Points will be awarded. The Enrollment Date means the date we receive your Program enrollment. Points may only be earned if your Account is open and is not over due for above the credit line. When your Account is current and is within the credit line, you will begin to earn Points again. There is no limit on the number of Points that can be earned. Points do not have a cash value, cannot be purchased or exchanged for cash, and cannot under any circumstances be redeemed for cash or used as a payment for your Account or other obligations to us.

*Statement of Points.* Program Points are updated monthly at the time of your Account billing statement. Points earned during the month will be posted at your billing statement date and are not available for redemption until at least two business days after your billing statement date.

*Expiration of Points.* Points will expire five years after being awarded. Points redeemed and expired will be based on a first-earned, first-spent basis.

*Redemption of Points.* Points may be redeemed for products or services ("Rewards"), which are set forth in a Brochure mailed to you from time to time. Points may only be redeemed if your Account is open and is not past due or above the credit line. All Rewards are subject to availability. We reserve the right to modify or cancel any Reward at any time. When Points are redeemed for a Reward, the number of Points required for the Reward will be subtracted from your Point balance. You will contact the parties listed in the Brochure for instructions on how to redeem your Points.

*Tax Liability and Fees.* You will be responsible for any federal, state, or local taxes due arising out of the accrual of Points or redemption of the Rewards. You will also be responsible for any fees or other charges due in connection with the redemption of any Reward.

*Changes in the Program.* This Program and the benefits offered at our sole discretion. We reserve the right to alter or change any Program feature or benefit, prospectively or retroactively, including, without limitation, Point accrual or redemption criteria; and to cancel or temporarily suspend the Program at any time without notice. In the event you cancel any fraud or share your privileges relating to the accrual of Points or redemption of Rewards, we reserve the right to cancel any accrued Points as well as cancel your Account and participation in the Program. If we cancel the Program, we will normally provide at least 30 days written notice to you. However, if you violate any provision of these Terms and Conditions, or are in default under your Account, or your Account is closed, we may cancel this Program without providing you 30 days written notice and you will forfeit any unused Points. You may cancel your participation at any time. The Program is void where prohibited by federal, state, or local law.

*Rewards.* Maritz Inc. and BRJ provide administrative services for redemption of the Rewards. Maritz Inc. and BRJ are independent contractors and is not affiliated with us. Neither we, Maritz Inc., nor BRJ shall be liable for bodily harm and/or property damage that may result from participating in the Program, nor for the redemption of Rewards and use of Rewards. In the event any Reward that is redeemed is modified, defective, or otherwise unsatisfactory to you, you will look solely to the merchant or manufacturer of the Reward and not to us for any repair, refund, or satisfaction of your claim. We are not responsible for any lost, stolen, destroyed, or expired Rewards.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois Limited )
Liability Company ) Case No.
 )
        Plaintiff )
 )
    v. )
BARBARA J KING )
 )
        Defendant(s). )
 )
 )
 )

## AFFIDAVIT OF CLAIM

I, Eileen M. Mahon, an employee of Resurgence Financial, LLC, being first duly sworn upon my oath depose and state as follows:

1.    I am over the age of 21, under no legal disability, and if called and sworn as a witness in this cause, would testify that I have personal knowledge of the facts set forth in this petition.

2.    I am employed by Resurgence Financial, LLC, an Illinois Limited Liability Company ("Resurgence").

3.    Resurgence is proceeding in this matter on an assignment from Sherman Acquisition LLC.

4.    I am familiar with the account of BARBARA J KING with Resurgence.

5.    I am familiar with the computer records of Resurgence and how to search the records of Resurgence to determine the status of accounts with our company.

6.    I have the authority to review the computer records of Resurgence.

7.    I have reviewed the records of Resurgence, which reflect that BARBARA J KING was issued a credit card by Providian Financial Corp, with an account number of ▓▓▓▓▓▓▓1808 and that the issuer, Providian Financial Corp, charged off said account on December 31, 2003, as a result of Defendant defaulting in making payments pursuant to the Cardmember Agreement.

8.    I have reviewed the computer records of Resurgence. There is a balance due to Resurgence on this account in the amount of $6,468.72 and Resurgence has not received payment.

FURTHER, THE AFFIANT SAYETH NAUGHT.



"OFFICIAL SEAL"
NOEL D'AGUIO
COMMISSION EXPIRES 08/04/10

*Eileen M. Mahon*
RESURGENCE FINANCIAL, LLC
EILEEN M. MAHON

SUBSCRIBED AND SWORN TO
before me this 27th day of February , 20 08

_____
NOTARY PUBLIC



R0051320

UNITED STATES OF AMERICA

STATE OF ILLINOIS                                                              COUNTY OF COOK

FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois
Limited Liability Company,                                    CASE NUMBER

                    Plaintiff

          v.

BARBARA J KING

                    Defendant(s)                                               FILE STAMP HERE

AFFIDAVIT TO MILITARY SERVICE

Resurgence Financial, LLC, by its duly authorized agent, being first duly sworn upon my oath depose and states:

With respect to (each) defendant, BARBARA J KING

☐      the Defendant is

☒      the Defendant is not

☐      I am unable to determine whether the Defendant is

in the military service of the United States of America.

This affidavit is based on these facts:  I searched on the Department of Defense website:  www.dmdc.osd.mil/scra/owa/home
and the report indicated that the Defendant (is) (is not) on active military duty;

"OFFICIAL SEAL"
NOEL D'AGUIO
COMMISSION EXPIRES 08/04/10

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil
Procedure, the above signed certifies that the statements set forth in this instrument
are true and correct, except as to matters therein stated to be on the information and
belief and as to such matters the above signed certifies as aforesaid that s/he believes
the same to be true.

Sworn and Subscribed before me
this _____ day of _____, 20___

_____
NOTARY PUBLIC

                                                               EILEEN M. MAHON

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
#41776

# APPENDIX B

R0051320

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

| RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company | ) | Case No. 08M1-121085 |
|---|---|---|
| | ) | |
| Plaintiff | ) | Amount Claimed: $6,468.72 |
| | ) | |
| v. | ) | Return Date: |
| | ) | |
| BARBARA J KING | ) | |
| Defendant(s). | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**AMENDED VERIFIED COMPLAINT AT LAW**

RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company ("Plaintiff"), by and through one of

its staff attorneys, complains of BARBARA J KING ("Defendant"), as follows:

1.    Pursuant to 735 ILCS 5/2-403, Plaintiff is proceeding in this cause as the Assignee of Providian Financial Corp

("Providian Financial Corp "), as set forth in the Bills of Sale attached hereto, made a part hereof and marked as Exhibit

"A".

2.    Providian Financial Corp  and Defendant entered into a Cardmember Agreement ("Agreement"), wherein

Providian Financial Corp  issued a credit card account number ███████████1808 to Defendant and Defendant agreed

to pay all amounts charged by the use of the card.  A copy of the Agreement containing the terms and conditions

governing the use of the credit card is attached hereto, made a part hereof and marked as Exhibit "B".

3.    Thereafter, Defendant incurred charges by use of the credit card.

4.    As set forth in the Affidavit of Plaintiff, attached hereto, made a part hereof and marked as Exhibit "C", there

is now due and owing from Defendant to Plaintiff the sum of $6,468.72, of which no part has been paid, although duly

demanded.

5.    Defendant resides in the State of Illinois.

WHEREFORE, Plaintiff, Resurgence Financial, LLC, an Illinois Limited Liability Company, demands a judgment against the Defendant(s) BARBARA J KING, in the sum of $6,468.72, plus court costs.

Respectfully Submitted,

RESURGENCE FINANCIAL, LLC,
an Illinois Limited Liability Company,
Plaintiff herein,

By One of Its Staff Attorneys

Conrad Noll IV, Esq.

VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information an belief, and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

RESURGENCE FINANCIAL, LLC
By One of Its Attorneys

Conrad Noll IV, Esq.

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
Firm No. 41776

File R0051320

# EXHIBIT "A"

## Bill of Sale

Providian National Bank, for value received and in accordance with the terms of the Purchase and Sale Agreement by and between Providian National Bank and SHERMAN ORIGINATOR, LLC ("Purchaser"), dated as of August 24, 2005 (the "Agreement"), does hereby sell, assign and transfer to Purchaser, its successors and assigns, all right, title and interest in and to the Accounts listed in the Account Schedule attached (as may be amended in accordance with the Agreement) as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on 8-26-05

Providian National Bank

By _____
Print Name Katherine Dickerson
Title SVP

Bill of Sale


Sherman Acquisition LLC, for value received and in accordance with the terms of the Purchase and Sale Agreement by and between Resurgence Financial, LLC and SHERMAN ACQUISITION LLC ("Seller"), dated as of September 19, 2005 (the "Agreement"), does hereby sell, assign and transfer to Purchaser, its successors and assigns, all right, title and interest in and to the Accounts listed in the Account Schedule attached (as may be amended in accordance with the Agreement) as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on September 19, 2005.

Sherman Acquisition LLC

By _____
Print Name _____
Title_____

PNB Sherman final.9.20.05

## Account as referenced in Appendix A

| AcctID | Pool | CardType | Merchant | AcctNumber | SSN |
|---|---|---|---|---|---|
| …4253 | | | Providian Financial Corp | …1808 | (redacted) |
| DateOfBirth | Prefix | BrwrFirstName | BrwrLastName | Suffix | BrwrAddr1 |
| | | Barbara | King | | (redacted) |
| BrwrAddr2 | City | State | Zip | Zip4 | HomePhone |
| | Calumet City | IL | 60409 | 2905 | |
| WorkPhone | WirelessPhone | OtherPhone | EmpName | EmpAddress | CoSSN |
| | | | | | |
| CoDateOfBirth | CoPrefix | CoFirstName | CoLastName | CoSuffix | CoAddress |
| | | Kennis | King | | |
| CoAddress2 | CoCity | CoState | CoZip | CoZip4 | CoHomePhone |
| | | | | | |
| CoWorkPhone | CoWirelessPhone | CoOtherPhone | CoBrwrEmpName | CoBrwrEmpAddress | OriginationDate |
| | | | | | 1/30/03 |
| OrigPayAmount | OrigBalance | CreditLimit | LastPmtDate | LastPurchDate | LastPurchAmt |
| | | | 5/23/03 | | |
| ChgOffDate | ChgOffBalance | PrincipalBalance | InterestBalance | OtherBalance | |
| 12/31/03 | 2,531.38 | 3,385.12 | 22.24 | 0.00 | |

# EXHIBIT "B"





F01-9152-0
305█

## PROVIDIAN NATIONAL BANK VISA® AND MASTERCARD® ACCOUNT AGREEMENT

Please review this document and keep it with your other important papers. This Account Agreement contains the terms that govern your Providian National Bank VISA or MasterCard Account (the "Account"). The Account allows you to make purchases by using your VISA or MasterCard credit card (the "Card") wherever it is honored and to get cash advances from us or any other participating financial institution and from Automated Teller Machines. Convenience checks may also be provided to you as an additional way to use the Account. In this Agreement, "you" and "your" mean each person for whom we have opened a credit card Account. "We," "our," "ours," and "us" mean Providian National Bank, or its assignee, as listed on your billing statement. The Account may be used only for personal, family, household, and charitable purposes, and not for any business or commercial purpose. Any use of this Account shall constitute acceptance of the terms of this Agreement. You and we agree as follows:

**Payment.** You will receive a monthly statement showing your outstanding balance. Payment on this Account is required in U.S. dollars (checks must be payable at a U.S. office of the bank the check is drawn on) for at least the payment due as shown on your statement by the payment due date in accordance with payment instructions on your monthly statement. The back of your monthly statement includes the rules we follow when we post payments to your Account. Convenience checks and other checks we may issue to you may not be used to make payments on your Account or to make payments on any other account you have with us or our affiliates. The payment due will be 3% of the new balance shown on your statement plus the amount of any past due payment, and may include the amount by which the new balance exceeds your credit line. However, the payment will be not less than $15 (unless your new balance is less than $15, in which case the payment due will be the amount of the new balance). If your Account is past due or above the credit line, we may require a higher minimum payment, but we will notify you before doing so. If your payment is more than the payment due, it will be treated as a single payment and none of it will be applied to future payments due. We may accept late or partial payments, or payments marked "paid in full" or marked with other restrictions, without losing our right to collect all amounts owing under this Agreement.

**Finance Charges.** Finance charges begin to accrue on a debit when it is included in one of your daily balances and continue to accrue until that balance is reduced by a payment or credit. Your Account has two daily balances: the Purchase Balance, which consists of purchases you make with your Card and fees, other than cash advance transaction fees, charged to your Account, including fees for optional services; and the Cash Advance Balance, which consists of cash advances and cash advance transaction fees. Any payment amount we receive that exceeds the finance charges and fees then due will ordinarily be applied first to the Balance with the lower ANNUAL PERCENTAGE RATE (APR) until that Balance is zero, and then to the remaining Balance. We reserve the right to apply payments differently without further notice. The Purchase and Cash Advance Balances are reduced by payments as of the date received, and by credits as of that date posted. Purchases are included in your Purchase Balance as of the date made. Fees are included in your Purchase Balance as of the transaction date. Cash advances are included in your Cash Advance Balance as follows: cash advances from other financial institutions and through Automated Teller Machines as of the date made; funds electronically transmitted, as of the date transmitted; cash advance checks payable to you that are identified as cashier's checks, which we may mail to you at your request, as of seven days after the date we print on the check; all other checks, including any convenience checks, as of the date presented to us. Cash advance transaction fees are included in your Cash Advance Balance as of the transaction date. Other debits are included in your Purchase or Cash Advance Balance as of the date posted. Finance charges are added to your Purchase and Cash Advance Balances each day and are then posted on the last day of the billing cycle. There is no period within which credit extended may be repaid without incurring a finance charge.

To figure the daily finance charge for purchases and the daily finance charge for cash advances, we start with your previous day's Purchase Balance and Cash Advance Balance, add all debits and subtract all credits for the current day to the applicable Balance (as explained in a paragraph above), and multiply the net amount by the applicable daily periodic rate (see following paragraph). The finance charge for purchases is then added to and included in that day's Purchase Balance, and the finance charge for cash advances is then added to and included in that day's Cash Advance Balance. We treat a credit balance for any day as zero. We determine the total finance charge on your Balances for the billing cycle by adding together the finance charge for purchases for each day within the billing cycle and the finance charge for cash advances for each day within the billing cycle. In calculating finance charges, an adjustment will be made for any transaction or payment that would have affected the finance charge computation in a prior billing cycle had it been posted in that cycle. The applicable daily periodic rate for such a transaction will be the rate in effect for that current billing cycle rather than the rate in effect on the date of the transaction.

The term "Prime Rate" as used in this Agreement means the prime rate published in The Wall Street Journal on the first business day of the previous calendar month. Any increase or decrease in the APR will take effect on the first day of your billing cycle and may result in a slight increase or decrease in the amount of your minimum payment.

The ANNUAL PERCENTAGE RATE for purchases will vary and may be adjusted each billing cycle up to 10.99% above Prime Rate. Using this formula, the APR for purchases is the April 2000 billing cycle is 18.99%, corresponding to a daily periodic rate of 0.0540%, and your APR for purchases will not go below 15.99%.

The ANNUAL PERCENTAGE RATE for cash advances will vary and may be adjusted each billing cycle up to 12.99% above Prime Rate. Using this formula, the APR for cash advances in the April 2000 billing cycle is 21.99%, corresponding to a daily periodic rate of 0.0602%, and your APR for cash advances will not go below 21.99%.

To determine the average daily balance shown on your statement for purchases, add each day's Purchase Balance (including daily finance charge) in the billing cycle and divide by the number of days in the billing cycle. To determine the average daily balance shown on your statement for cash advances, add each day's Cash Advance Balance (including daily finance charge) in the billing cycle and divide by the number of days in the billing cycle. You can multiply each of these average daily balances by the number of days in the billing cycle and by the applicable daily periodic rate to obtain subtotals, and then add the two subtotals together to determine the total amount of finance charges on your balances for the billing cycle. If a cash advance transaction fee credit first increases fees, or expenses then processing are charged (see Fees section), these amounts are also FINANCE CHARGES.

Fees. A membership fee of $7.95 will be charged to your Account each month. If you request and we issue an additional Card or your Account with the additional Card issued and every 12 months thereafter for as long as each additional Card is outstanding. If you request and we use our Courier Card Service, a one-time fee of $19.95, which is a FINANCE CHARGE, will be charged to your Account. In some cases, additional Card is outstanding. If you request and we use our Courier Card Service, a one-time fee of $19.95, which is a FINANCE CHARGE, will be charged to your Account. In some cases, additional processing may not be available. We may charge your Account $29 for each Card you ask us to replace each minimal payment each check that we return. If your balance is unable such this payment order or renewal of such an order each billing cycle while which your Account is delinquent, the charge applies to each billing cycle within which your balance exceeds your credit line even if your Account is closed. If you request a copy of billing statements that were first sent to you more than two months earlier, we may charge a handling fee of $2 for each such copy. A cash advance fee of 3% (minimum $5), which is a FINANCE CHARGE, may be charged for each cash advance transaction made on your Account. For some cases line increases, you may be charged a fee, which is a FINANCE CHARGE, the amount of which will be disclosed to you before you accept that line increase offer. If you request that we make a one-time automatic payment from your personal checking account, we may charge your Account a fee of $4.95 for each request. This fee is a FINANCE CHARGE, and it will apply whether or not funds are available in your personal checking account to make the payment.

Default. You will be in default if any information you provided us proves to be incomplete or untrue; if you do not comply with any part of this Agreement upon your death, bankruptcy, or insolvency; if you do not pay any other debts when due; if a bankruptcy petition is filed by or against you; or if we believe in good faith that you may not pay or perform your obligations under this Agreement. If you are in default, we may, without further demand or notice, cancel your credit privileges, declare your Account balance immediately due and payable, and use any remedy we may have. In the event of your default, the outstanding balance on your Account will continue to accrue interest at the APR(s) disclosed in the Finance Charges section of this Agreement, even if we have filed suit to collect the amount you owe.

Credit Line. Your credit line and cash advance line are disclosed when you open your Account and on your statement each month. Your cash advance line is limited to a portion of your credit line. We may increase or decrease your credit line and/or your cash advance line based on information we obtained from you or your credit records. Your available credit for purchases is normally the difference between your credit line and your Account balance (including transactions made or authorized but not yet posted). Your available credit for a cash advance is normally the difference between your cash advance line and your Cash Advance Balance or the difference between your credit line and your Account balance, whichever is less. If you send us a large payment, we may delay your available credit while we confirm that the check will clear. For certain transactions, available credit may be less. You will not let your Account, and we may refuse to honor, any transaction that would cause you to exceed your available credit or your available credit for cash advances. Your credit line may be reduced if you attempt to go over your cash advance credit line.

Promise to Pay. You promise to pay us when due all amounts borrowed when you or someone else uses your Account (even if the amount charged exceeds your permission, all other transactions and charges to your Account, and all collection costs we incur including, but not limited to, reasonable attorney's fees and court costs. (If you win this suit, we will pay your reasonable attorney's fees and court costs.)

Changes. After we provide you any notice required by law, we may change any part of this Agreement and add or remove any term, condition, or requirement. If a change is made to the Finance Charges section of this Agreement, the new finance charge calculation will apply to your entire Account balance from the effective date of the change. Changes will apply to balances that include items posted to your Account before the date of the change, and will apply whether or not you continue to use the Account.

Foreign Exchange/Currency Conversion. If you use your Card for transactions in a currency other than U.S. dollars, the transactions will be converted to U.S. dollars, generally using either a (i) government-mandated rate or (ii) wholesale market rate in effect the day before the transaction is processed, increased by 3%. If a credit is subsequently given for a transaction, it will be decreased by the same percentage. The currency conversion rate used on the conversion date may differ from the rate in effect on the date you used your Card. You agree to accept the converted amount in U.S. dollars.

The Card; Cancellation. You may cancel your credit privileges at any time by notifying us in writing and destroying the Card(s). Upon the Card expiration at the end of the month shown on it, we reserve the right not to renew the Card. You may cancel the Card and your credit privileges at any time after 30 days notice to you, or without notice if permitted by law. If your Card is cancelled or not renewed, finance charges and other fees will continue to be assessed, payments will continue to be due, and all other applicable provisions of this Agreement will remain in effect. If you terminate your credit privileges, or if we cancel or do not renew the Card, you may no longer write checks on your Account, and you should destroy any unused checks you may have issued to you.

# EXHIBIT "C"

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois Limited )
Liability Company                                )  Case No.  08M1-121085
                                                 )
                              Plaintiff           )
              v.                                  )
BARBARA J KING                                   )
                                                 )
                              Defendant(s).       )
                                                 )
                                                 )
                                                 )

AFFIDAVIT OF CLAIM

I, Eileen M. Mahon, Account Administrator, being first duly sworn upon my oath depose and state as follows:

1.      I am over the age of 21, under no legal disability, and if called and sworn as a witness in this cause, would testify that I have personal knowledge of the facts set forth in this petition.

2.      I am employed by Resurgence Financial, LLC, an Illinois Limited Liability Company ("Resurgence").

3.      Resurgence is proceeding in this matter on an assignment from Sherman Acquisition LLC.

4.      I am familiar with the account of BARBARA J KING with Resurgence.

5.      I am familiar with the computer records of Resurgence and how to search the records of Resurgence to determine the status of accounts with our company.

6.      I have the authority to review the computer records of Resurgence.

7.      I have reviewed the records of Resurgence, which reflect that BARBARA J KING was issued a credit card by Providian Financial Corp, with an account number of ▓▓▓▓▓▓▓▓▓808 and that the issuer, Providian Financial Corp charged off said account on December 31, 2003, as a result of Defendant defaulting in making payments pursuant to the Cardmember Agreement.

8.      I have reviewed the computer records of Resurgence. There is a balance due to Resurgence on this account in the amount of $6,468.72 and Resurgence has not received payment.

FURTHER, THE AFFIANT SAYETH NAUGHT.

┌─────────────────────────────────┐
│     "OFFICIAL SEAL"             │
│      TRESSA I PECK              │
│ Notary Public, State of Illinois│
│ My Commission Expires 11/4/2009 │
└─────────────────────────────────┘

*Eileen M Mahon*

RESURGENCE FINANCIAL, LLC
EILEEN M. MAHON, Account Administrator

SUBSCRIBED AND SWORN TO
before me this 18th day of June, 20 08.

NOTARY PUBLIC

R0051320

UNITED STATES OF AMERICA

STATE OF ILLINOIS                                                    COUNTY OF COOK

FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois
Limited Liability Company,                          CASE NUMBER

                 Plaintiff              08M1-121085

        v.

BARBARA J KING

            Defendant(s)                                      FILE STAMP HERE

## AFFIDAVIT TO MILITARY SERVICE

I, Eileen M. Mahon, Account Administrator, being first duly sworn upon my oath depose and state as follows:

With respect to (each) defendant, BARBARA J KING, , :

☐     the Defendant is

☒     the Defendant is not

☐     I am unable to determine whether the Defendant is

in the military service of the United States of America.

This affidavit is based on these facts:  I searched on the Department of Defense website:  www.dmdc.osd.mil/scra/owa/home
and the report indicated that the Defendant (is) (is not) on active military duty.

"OFFICIAL SEAL"
TRESSA I PECK
Notary Public, State of Illinois
My Commission Expires 11/4/2009

Sworn and Subscribed before me
this 20ᵗʰ day of June , 20 08

_Eileen M. Mahon_

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil
Procedure, the above signed certifies that the statements set forth in this instrument
are true and correct, except as to matters therein stated to be on the information and
belief and as to such matters the above signed certifies as aforesaid that s/he believes
the same to be true.

NOTARY PUBLIC

EILEEN M. MAHON

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
#41776