IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 08 CV 3306 |
| v. ) | |
| ) | Judge St. Eve |
| RESURGENCE FINANCIAL, LLC, ) | Magistrate Judge Cox |
| ) | |
| Defendant. ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

### I. INTRODUCTION

Plaintiff claims that Resurgence violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f ("FDCPA"), Illinois Collection Agency Act, 225 ILC 425/8b ("ICAA") and Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") by filing a lawsuit for collection of a debt from her without having an assignment that complies with Section 8b of the ICAA and without attaching the assignment to the collection complaint.

Plaintiff's argument fails for the following reasons:

- The "assignment for collection" provision of ICAA Section 8b does not apply to Resurgence, a debt buyer filing suit on a debt in its own name with no third-party interests involved,

- The ICAA does not apply to attorney conduct, such as pleadings practice,

- No private right of action exists under the ICAA in these circumstances after the January 1, 2008 amendments,

- Even if the ICAA applies, it does not require an assignment be attached to the collection complaint,

- Plaintiff fails to allege actual damages as required under the ICAA and ICFA,

- The FDCPA should not be used to challenge Illinois pleading practices, and

- Defendant has not engaged in any acts in violation of the ICFA.

## II. SUMMARY OF RELEVANT ALLEGATIONS OF COMPLAINT

Resurgence, a debt buyer, (Comp., ¶14), is engaged in the business of purchasing charged-off consumer debts and enforcing the debts against consumers. (Compl., ¶¶22-23). On or about April 14, 2008, Resurgence filed suit against plaintiff in the Circuit Court of Cook County to collect a debt from her. (Compl., ¶28 & Ex. A). The complaint allegedly did not attach any assignment document. (Compl., ¶29). An amended complaint was also filed. (Comp., ¶31). Plaintiff alleges that Resurgence did not have an assignment that complied with Section 8b of the ICAA. (Compl., ¶30). Plaintiff claims that because Resurgence did not have an assignment that complied with Section 8b of the ICAA or that was attached to the complaint, it did not have a valid claim and violated the FDCPA, ICAA and ICFA. (Compl, ¶¶47, 57, 62).

## ARGUMENT

### A. COUNT II - ICAA

**1. Section 8b does not apply to debt buyer filing suit on a debt in its own name with no third-party interests involved**

Plaintiff's theory rests on an incorrect interpretation of Section 8b of the ICAA and a misapplication of that section to debt buyers. Plaintiff wrongly claims that the ICAA was amended January 1, 2008 to "define debt buyers as 'collection agencies'" and "make[s] applicable the special assignment requirements in ICAA §8b, 225 ILCS 425/8b" to them. (Compl, ¶10). Plaintiff follows that claim with an incomplete block quotation of Section 8b (Compl, ¶11) which omits the heading of the Section- "Assignment for Collection"- and thus completely misconstrues the purpose of the provision. Contrary to plaintiff's theory, assignments <u>for</u> collection do not apply to debt buyers who purchase accounts pursuant to assignments in which all rights and ownership interest are transferred. On the contrary, assignments for collection have a long history and developed in the law as a way to permit an assignee to file suit where the assignor retained naked legal title alone. *See Sprint Communications Co., L.P., et. al. v APCC Services, Inc., et. al.*, --- S.Ct. ---, 2008 WL 2484712, *7 (U.S. June 23, 2008)("Thus, during the 19th century, most state courts entertained suits virtually identical to the litigation before us: suits by individuals who were assignees for collection only, *i.e.*, assignees who brought suit to collect money owed to their assignors but who promised to turn over to those assignors the proceeds secured through litigation."). Not only does plaintiff's application of Section 8b ignore the long history and meaning of the words "assignment for collection," it is inconsistent and contradictory with other provisions of Section 8 of the ICAA.

a. "Assignment for Collection."

2

The plain language of Section 8b demonstrates that it applies to assignments <u>made for the purpose of collection</u>, and not to assignments in which <u>all rights</u> are transferred to the assignee. The Supreme Court recently addressed this distinction when it considered whether an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor. *Id* at *2. The Court discussed the history and development of assignments for collection, noting that assignments for collection are those founded on the transfer of legal title alone- not ownership. The Court stated:

> The history and precedents that we have summarized make clear that courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts- both before and after the founding- have always permitted the party *with legal title alone* to bring suit; and that there is a strong tradition specifically of suits by assignees for collection. *Id* at *11. (emphasis added).

The transfer of legal title only defines an assignment for collection. Thus, it does not transfer the "beneficial ownership" to the assignee, but it vests legal title in the assignee, empowers the assignee to collect and permits the debtor to "discharge himself by making payment to the assignee." *Ecker v Big Wheels, Inc.*, 136 Ill.App.3d 651, 654, 483 N.E.2d 639, 642 (4th Dist. 1985).[1]

Plaintiff's citation to *Business Service Bureau, Inc v Webster*, 298 Ill.App.3d 257, 698 N.E.2d 702 (4th Dist. 1998) is consistent with defendant's interpretation of "assignments for collection" vs. assignments of ownership. (Compl., ¶10). Plaintiff cites the *Webster* case for the proposition "Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment." (Compl., ¶10). The *Webster* case involved a medical debt that was <u>assigned for collection</u>. The assignment at issue stated:

> For valuable consideration of an agreed to percentage of the amount collected, and pursuant to the Collection Agency Agreement, the undersigned representative of ARROW MEDICAL SERVICES, hereby assigns all of its rights, title and interest in and to the following named delinquent accounts owing by the person or persons so specified to

---

[1] *See also Schoonmaker v Lawrence Brunoli, Inc.*, 265 Conn. 210, 228, 828 A.2d 64, 80 (Conn. 2003)("under the doctrine of assignment for collection, the assignor does in fact retain an equitable ownership, and therefore, substantial rights, in the action assigned"); *DeBenedictis v Hagen*, 77 Wash.App. 284, 289, 890 P.2d 529, 532 (Wash.Ct.App. 1995)(distinguishing between an assignment in which entire ownership is transferred and an assignment for collection in which legal title only is transferred); *Stanislaus Pump, Machinery & Construction Corp.*, 200 Cal.App.3d 1442, 1447, 246 Cal.Rptr. 601 (Cal.Ct.App. 1988)("when an assignment is made for collection or as collateral security, the assignor retains the equitable interest in the thing assigned and therefore can maintain an action for its recovery.").

BUSINESS SERVICE BUREAU, to sue for and take all legal steps that may be deemed proper or necessary to affect collection thereof, in such company's own name. *Id* at 258.

The assignment gave Business Service Bureau the right to sue or take other legal steps to collect in its name, and if successful it only kept a contingency fee. Arrow Medical Services still maintained beneficial ownership and the right to proceeds recovered. It is not surprising then, that Section 8b applied to the assignment because it was an "assignment for collection."

On the other hand, in this case, the assignment is one in which ownership interest is transferred and Resurgence is proceeding to collect in its own name with no third-party interests involved. (Compl. at Exs. A & B). Plaintiff acknowledges this, citing to the state court pleadings, and also alleging Resurgence "is engaged in the business of purchasing charged-off consumer debts and enforcing the debts against the consumers." (Compl., ¶22 & Exs. A & B). Plaintiff further states that Resurgence is a "debt buyer" and that "the purported obligations were originally owed to other entities and were charged off prior to purchase" (Compl., ¶¶14, 26).

There are no allegations that Resurgence filed suit against plaintiff pursuant to an <u>assignment for collection</u> or that Resurgence filed suit on behalf of or for the benefit of any other entity. On the contrary, the first amended omplaint demonstrates that Resurgence filed suit for itself as owner of plaintiff's account. (Compl. at Exs. A & B).

**b. Section 8b applies to an entity that gets legal title, not beneficial ownership.**

Section 8b states:

425/8b Assignment for Collection

§8b. Assignment for collection. An account may be assigned to a collection agency for collection with **title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor** provided...

The plain language of Section 8b demonstrates that it applies to the circumstance in which legal title is passed to the collection agency to enable the collection agency to file suit for collection <u>as assignee for the creditor</u>. *See Sprint Communications Co., L.P. v APCC Services, Inc.,* --- S.Ct. ---, 2008 WL 2484712, *2 (U.S. June 23, 2008)(holding that assignee filing suit pursuant to assignment for collection can file suit in its own name). Regardless of how Section 8b read before the Amendment, it does not apply to debt buyers who purchase accounts and obtain beneficial ownership.[2]

---

[2] Section 8b also does not apply where an entity refers an account (*i.e.* assigns an account) to an agency, which is specifically addressed in Section 8b(d). *See* §8b(d)("No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.").

4

The ICAA defines "creditor" as "a person who extends consumer credit to a debtor." 225 ILCS 425/2. Defendant is not a creditor under the ICAA. Defendant purchases debt. It files in its own name to collect for itself without any third-party interests involved. Defendant sued plaintiff through licensed counsel to collect her unpaid debt in state court. While defendant did not extend credit to plaintiff, it acquired a 100% interest in the debt and stepped into the shoes of the assignor for all purposes.[3] Plaintiff's interpretation makes "for the creditor" superfluous, and statutes can not be interpreted in ways to make words superfluous.

Further, the fact that Section 8b applies only to assignments for collection in which title is transferred but not ownership is consistent with Section 8a-1 of the Act which provides in part:

> 425/8a-1. Collection action
> §8a-1. (a) No account may be referred by a collection agency to an attorney unless, prior to placing an account with an attorney for further collection action, each account creditor is notified in writing by the collection agency of the collection agency's intent to refer the account to an attorney...

Section 8a-1 and 8b address the circumstance in which a third party collection agency files suit, but ownership of the account remains with the creditor - not the circumstance in which a collection agency has acquired ownership of the debt and files suit on its own behalf. For example, it would not make sense to require a debt buyer who has acquired all rights to a debt pursuant to an assignment to notify the original creditor of its intent to file suit for collection of the debt. Once the account is sold pursuant to an assignment, the original creditor no longer has an interest in the account. Since Resurgence did not acquire plaintiff's debt pursuant to an assignment for collection, Section 8b does not apply to its collection complaint.

2. **The Illinois Collection Agency Act does not apply to attorney conduct.**

Plaintiff further fails to state a claim under the ICAA because it does not apply to attorney conduct, such as pleadings practice. Plaintiff repeatedly alleges that defendant violated the ICAA because its attorneys failed to *physically* attach an assignment document to the state court pleading. (Compl., ¶¶12, 29, 39). In fact, plaintiff's own class definition is wholly predicated and completely reliant upon identifying class members against whom defendant filed a complaint "without attaching ... an assignment..." (Compl. ¶39). These allegations fail to state a claim under the ICAA because

---

[3] See PRA III, LLC v Hund, 364 Ill.App.3d 378, 382, 846 N.E.2d 965, 968 (3rd Dist. 2006)("The assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor."); Olvera v Blitt & Gaines, P.C., 431 F.3d 285 (7th Cir. 2005)(pursuant to common law of assignments, assignee assumes rights as well as duties of assignor), see also Vickey v Asset Acceptance, LLC, 2004 WL 1510026, *2 (N.D.Ill. 2004).

5

the improper conduct alleged relates to what is essentially "attorney conduct," i.e. the way defendant's attorneys constructed their pleading, and the ICAA is not intended to regulate specific attorney conduct, such as pleadings practice.

First, Section 8b requires only that a collection suit be filed "by a licensed attorney at law." 222 ILCS 425/8b(e). Section 2.03(5) of the Act though specifically excludes the attorneys from liability: **"This Act does not apply ... and specifically does not include the following:... 5. Licensed attorneys at law;"** Here, plaintiff is alleging that Resurgence's licensed attorney's purported conduct (drafting and filing a purportedly defective pleading in state court) somehow implicates Resurgence (the federal case defendant) when the ICAA itself does not apply to the attorney. That argument is inconsistent.

Second, Illinois is extremely reluctant to construe its statutes in any manner which would regulate specifics of the practice of law. *See Shalabi v The Huntington National Bank*, 2001 WL 777055 (N.D. Ill.); *Cripe v Leiter*, 184 Ill.2d 185 (1998). In *Shalabi* and *Cripe*, the courts held that the Illinois Consumer Fraud Act did not apply to allegations of misconduct against an attorney engaged in the practice of law. *Shalabi* at *2; *Cripe* at 194. The same argument controls in this case. The ICAA should not be construed to apply to plaintiff's allegations regarding the method and manner in which defendant's attorneys draft, construct or file a court document, namely the state court collection complaint.

> The court in *Shalabi* stated:
>
> ... the Illinois Supreme Court was not solely interested in the attorney-client relationship in *Cripe*, but also focused on the nature of law as a business historically regulated by the Illinois Supreme Court ... The court explained the way that it administers a comprehensive regulatory scheme governing attorney conduct, including setting forth the Illinois Rules of Professional Conduct, establishing discipline for violation of those rules, appointing the Attorney Registration and Disciplinary Commission ("ARDC") to supervise the registration of and disciplinary proceedings affecting members of the Illinois Bar, and creating a procedural scheme under which the ARDC operates.
>
> ... 'The purpose of this regulatory scheme is to protect the public and maintain the integrity of the legal profession.' The court ... concluded that the Illinois legislature would not have usurped the court's authority to regulate such conduct without a clear statement of the intent to do so ... Under the reasoning of *Cripe*, then, claims against an attorney for misconduct ... are not allowed under the [ICFA]. *Shalabi*, 2001 WL 777055 at *2-3.

Here, plaintiff is attempting to create new law by reading into the ICAA certain regulations that dictate the manner in which licensed attorneys draft and file state court collection pleadings. This Court should reject that attempt. The ICAA does not say that collection complaints filed in Illinois courts require an assignment document to be attached. Per *Shalabi*, such a clause should not

6

be read into the ICAA. Illinois civil procedure already regulates how pleadings are to be drafted and filed in Illinois state courts. *Shalabi*, 2001 WL 777055 at *2-3.

Furthermore, litigants in Illinois are already granted a privilege which provides for absolute immunity against any claims regarding the manner in which pleadings are drafted. *MacGregor v Rutberg*, 478 F.3d 790, 791 (7th Cir. 2007); *Ritchey v Maksin*, 71 Ill.2d 470, 476 (1978); *McNall v Frus*, 336 Ill. App. 3d 904, 906 (3d Dist. 2002); *Jurgensen v Haslinger*, 295 Ill. App. 3d 139, 141-42 (3d Dist. 1998). Under Illinois law, the only causes of action recognized for the improper drafting and filing of pleadings are malicious prosecution and abuse of process. *Havoco of America, Ltd v Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983); *Junction Solutions, LLC v MBS Dev, Inc*, 2007 WL 4234091, *5 (N.D. Ill.); *Ray Dancer, Inc v DMC Corp.*, 230 Ill. App. 3d 40, 47 (1st Dist. 1992); *Lyddon v Shaw*, 56 Ill. App. 3d 815, 822 (2d Dist. 1978).

3.   **No private right of action exists under the ICAA in these circumstances after January 1, 2008.**

Plaintiff's ICAA claim should also be dismissed because the ICAA does not provide for a private right of action in these circumstances. Plaintiff's citation to *Sherman v Field Clinic*, 74 Ill. App. 3d 21 (1st Dist. 1979) for the proposition that a private right of action now exists is wrong. (Compl., ¶49).

This jurisdiction has questioned whether the former version of the ICAA should be interpreted to imply a private cause of action. *See McCabe v Crawford & Co*, 272 F. Supp. 2d 736, 751-52 (N.D. Ill. 2003). As the Court stated in *McCabe*, 272 F. Supp. 2d at n. 16:

> The ICAA gives responsibility to the Department of Professional Regulation to enforce any violations of the ICAA and clearly contemplates enforcement through Department action. 225 ILCS 425/9(a). We are, therefore, not convinced that the ICAA should be interpreted as providing an implied private cause of action.

However, up until January 1, 2008, courts have followed *Sherman v Field Clinic*, 74 Ill. App. 3d 21 (1st Dist. 1979), in implying a private right of action into the ICAA under certain circumstances. *See McCabe*, at 751 ("While we are not entirely convinced that the ICAA should be interpreted to imply a private right of action, we will presume for now that it does."). The reason such a right was implied was because of five factors identified in *Sherman* that supported such a conclusion. *Kim v Riscuity, Inc*, 2006 WL 2192121, *3 (N.D.Ill). These factors are (1) whether the alleged action contravenes Illinois public policy; (2) whether the plaintiff is within the class of individuals the statute is designed to protect; (3) whether the injury alleged is within the range of injuries the statute is designed to protect; (4) whether there is a need for a civil action for damages

7

under the statute; and (5) and whether the statute limits the remedies available. *Kim* at *3 *citing Sherman*, 74 Ill. App. 3d at 29-30. All of the cases that have previously analyzed these five factors have done so using the pre-January 1, 2008 version of the ICAA.

However, in January 1, 2008, Illinois added Section 9.7 to the ICAA, which provides:

> Enforcement under the Consumer Fraud and Deceptive Business Practices Act. The Attorney General may enforce the knowing violation of Section 9 (except for items (1) through (9) and (19) of subsection (a)), 9.1, 9.2, 9.3, or 9.4 of this Act as an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act. 225 ILCS § 425/9.7

Section 9.7 explicitly provides for remedies that can be obtained under the ICAA, including civil damages, such as restitution through the Illinois Consumer Fraud Act, *via enforcement actions by The Illinois Attorney General*. The new Section 9.7 also explicitly limited the remedies available (knowing violations of Section 9(a)(10)-9(a)(18), and 9.1, 9.2, 9.3 and 9.4 but specifically excluding civil remedies for Section 9(a)(1)-9(a)(9) and 9(a)(19).) The prior versions of the ICAA had no such provisions for Illinois Attorney General enforcement actions and now such remedies available to plaintiffs specifically contained within the text of the ICAA.

As a result of the January 1, 2008 amendments to the ICAA, *Sherman* requires a different outcome in this case. The cases that interpret *Sherman*, such as *Kim*, that previously implied a private right of action into the ICAA, now dictate the opposite result in this case.

Under the first factor, a court looks at whether the alleged action contravenes Illinois public policy. *Kim* at *3 *citing Sherman*, 74 Ill. App. 3d at 29-30. In *Kim*, the action alleged was that the defendant violated the ICAA in sending improper collection letters to plaintiff. *Kim* at *1. In *Sherman*, the action alleged was that the defendant violated the ICAA in sending letters and making telephone calls to plaintiff. *Sherman* at 23. The courts in *Sherman* and *Kim* held that Illinois public policy, which is specifically declared in the ICAA, (now at 225 ILCS § 425/1a), intended to provide protection from such conduct. *Sherman* at 29-30; *Kim* at *3. Therefore, the courts found that the first factor was satisfied in those cases.

In this case, the action alleged is the filing of a suit that supposedly did not have an assignment. As is argued above, Section 8b of the ICAA is not intended to apply to attorney conduct nor to provide protections to litigants in state court. A litigant in state court has the protections of the court, the judge, and the various rules applicable to litigation. Whether or not something is or is not attached to a complaint is a far cry from abusive calls and improper letters

8

sent to a person at his or her home. Therefore, in this case, the first *Sherman* factor weighs against implying a private right of action into the ICAA.

Under the second factor, a court looks at whether the plaintiff is within the class of individuals the statute is designed to protect. *Kim* at *3 citing *Sherman*, 74 Ill. App. 3d at 29-30. In *Sherman* and *Kim*, the plaintiffs were receiving collection letters and telephone calls, which arguably placed the plaintiffs into the class of individuals the statute was designed to protect, *Sherman* at *23; *Kim* at *1.

In this case, again, plaintiff is not alleged to have received collection letters or telephone calls but rather plaintiff is a litigant defendant in a state court lawsuit. The ICAA is not intended to apply in these circumstances. Therefore, in this case, the second *Sherman* factor also weighs against implying a private right of action into the ICAA in this case.

Under the third factor, a court looks at whether the injury alleged is within the range of injuries the statute is designed to protect. *Kim* at *3 citing *Sherman* at 29-30. Again, in *Sherman* and *Kim*, the plaintiffs were allegedly being harassed by the manner in which collection letters and phone calls were made to them. *Sherman* at 23; *Kim* at *1. The ICAA at Section 9 lists the grounds and the types of injuries it is designed to prevent. 225 ILCS § 425/9. Injuries from receipt of collection letters and telephone calls were found to apply in *Sherman* and *Kim* based on that section of the statute. *Sherman* at 29-30; *Kim* at *3.

In this case, plaintiff is alleging injury sustained not from a letter or a telephone call but from the manner in which defendant's attorneys drafted and filed a pleading against plaintiff in state court. As has been argued above, the ICAA is not designed to protect against such purported injuries. Illinois already has a court system designed to address such conduct and protect from such "injuries," to the extent there are any. Therefore, the third *Sherman* factor weighs against implying a private right of action into the ICAA in this case.

Under the fourth factor, a court looks at whether there is a need for a civil action for damages under the statute. *Kim* at *3 citing *Sherman* at 29-30. This is arguably the most important and most heavily relied upon factor by *Sherman* and its progeny. Prior to January 1, 2008, there was no Section 9.7 drafted into the ICAA, which now provides for Illinois Attorney General enforcement of the ICAA through the ICFA. Therefore, in finding the fourth factor met in the pre-January 1, 2008 *Sherman* decision, the court stated:

> The act contains no provision for compensating debtors for their injuries and therefore provides little incentive for them to seek enforcement of the Act. Although an aggrieved debtor may derive some psychological satisfaction from the suspension or revocation of a

9

collection agency's certificate ... from the criminal prosecution of an offending agency, it seems unlikely that most debtors will initiate and pursue their complaints through all the steps in the administrative or criminal justice processes in the absence of any tangible reward. *Sherman* at 29-30.

In other words, prior to January 1, 2008, the ICAA only provided for regulation through the Illinois Department of Professional Regulation, and even where it did, it only allowed for the "suspension or revocation of a collection agency's certificate" or other criminal type penalties. This arguably did not provide for compensation or other remedies for plaintiffs, or at the very least, did not provide an incentive for them to seek enforcement through that Department.

Section 9.7 has completely eliminated this reasoning from the discussion and has provided debtors with a mechanism (and incentive) to obtain compensation, restitution and/or civil remedies through enforcement actions brought by the Illinois Attorney General on their behalf. The remedies available under the ICFA are broad and include restitution and civil penalties. 815 ILCS § 505/7. The January 1, 2008 addition of Section 9.7 to the ICAA has eliminated the rationale which prior courts cited in implying a private right of action in the ICAA.

Due to the inclusion of Section 9.7 into the ICAA, the fourth *Sherman* factor now weighs strongly against implying a private right of action into the ICAA in this case. This Court should distinguish *Sherman* and *Kim* due to their analysis of older versions of the ICAA that are no longer applicable. Post-January 1, 2008, the ICAA should no longer be held to imply a private right of action in this case.

The fifth factor also supports this conclusion. Under the fifth factor, a court looks at whether the statute limits the remedies available. *Kim* at *3 citing *Sherman* at 29-30. In *Kim* and *Sherman*, because the courts were analyzing an ICAA that did not contain Section 9.7 in its current state, they held that there were no such limits in the ICAA. *Sherman* at 29-30; *Kim* at *3. Now, the result should be the opposite.

Post-January 1, 2008, Section 9.7 not only provides for new available remedies but it also explicitly limits those remedies to knowing violations of Section 9(a)(10) through 9(a)(18), and 9.1, 9.2, 9.3 and 9.4. Perhaps, more importantly, Section 9.7 specifically *excludes* civil remedies for violations of Sections 9(a)(1) through 9(a)(9) and 9(a)(19). In other words, the Illinois legislature clearly intended to provide for new remedies for plaintiffs through the ICAA but also specifically expressed its intent to exclude remedies available to plaintiffs for other specifically defined conduct. Therefore, Section 9.7 not only explicitly demonstrates intent by the legislature to define what and when remedies are available for certain specific conduct but also demonstrates intent to limit those

10

remedies where and when it saw fit. None of this rationale applied prior to the ICAA's January 1, 2008 amendments. When applied to the fifth *Sherman* factor, this rationale now argues strongly against implying a private right of action into the ICAA.

This Court should distinguish *Sherman* and *Kim* due to their analysis of older versions of the ICAA that are no longer applicable and because they involve factual circumstances that differ from this case. Post-January 1, 2008, the ICAA should no longer be held to imply a private right of action in these circumstances and plaintiff's ICAA claim should be dismissed as a result.

4. Assuming, *arguendo*, the ICAA applies, there are no actual damages here.

Plaintiff's ICAA claim should also be dismissed because there are no actual damages pled. The cases addressing ICAA claims hold that a private cause of action under the ICAA requires a showing of actual damages. *McCabe*, at 751-2 (private right of action under ICAA rejected because no actual damages); *Trull v GC Servs.*, 961 F. Supp.1199, 1207-08 (N.D.Ill. 1997)(private right of action under ICAA rejected and ICAA claim dismissed because no actual damages); *Fuiten v Creditor Servs.*, 2007 WL 1582459, *7 (C.D.Ill. 2006)(private right of action under ICAA rejected and ICAA claim dismissed because no actual damages). Here, plaintiff does not allege any actual injury and she cannot allege any actual damages were sustained -- somehow due to defendant's attorney's failure to attach an assignment document to a state court pleading. Certainly, no actual damages are alleged to substantiate a class ICAA claim. Without actual damages, the ICAA does not apply and this Court should dismiss the claim.

5. Assuming, *arguendo*, the ICAA applies, it does not require the assignment be attached to the collection complaint.

Even if the court finds the ICAA is applicable, the ICAA contains no requirements about the form a state court pleading should take. The plain language of Section 8b undermines plaintiff's theory that it (§8b) requires assignments to be attached to state court collection complaints. On the contrary, Section 8b provides that it applies to an "assignment for collection" (*see* Section A(1) *above*) and it then sets forth what information the assignment documents must contain to establish the assignment is valid. For instance, under Section 8b(a)(i) and (ii), the assignment must be evidenced by a written agreement that has an effective date and the consideration paid. Section 8b(b) addresses how consideration must be paid. Section 8b(c) states all assignments must be voluntary and Section 8b(d) provides that no assignment is required to list a debt with a collection agency as an "account for collection." Section 8b(e) provides that no litigation can be filed "in the name of a

11

licensee as plaintiff" unless certain criterion are met. There is no provision in Section 8b that states an assignment must be attached to anything, much less a state court pleading to collect a debt.

Unfortunately for plaintiff, not only does the plain language of §8b undermine his theory, so does every other provision of the ICAA. There is not one section of the ICAA that requires assignments to be attached to state court pleadings.

The absence of statutory support for plaintiff's theory in the ICAA is not the only grounds for dismissal. Under plaintiff's logic, if defendant had to *physically* attach an assignment to the state court pleading, it could arguably be attaching several documents to it. These documents could include, for instance, a bill of sale, purchase agreement and/or spreadsheet (that is likely hundreds of pages long) identifying accounts that were part of the assignment. Also, these documents include privileged information about consideration for the assignment which would have to be redacted under the terms of defendant's purchase agreement. When put into practice, this logic is unrealistic, burdensome, time consuming and expensive.

Plaintiff tries to support his claim that an "assignment must be attached to the complaint" by citing *Candice Co v Ricketts*, 281 Ill. App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996). (Compl., ¶12). *Ricketts* is legally and factually distinguishable because *Ricketts* is not an ICAA case, does not involve a state court pleading and does not involve a state court collection complaint. Rather, it is a case about a mechanics lien and the appellate court's interpretation of §7 of the Illinois Mechanic Lien Act ("MLA"). *Id.* at 360, 666 N.E.2d at 722; 770 ILCS 60/7.

In *Ricketts*, defendant Father & Son contracted with defendants Ricketts and Malone to do work at 1033 Marshall ("1033"), a property Ricketts and Malone leased. *Id.* at 360, 666 N.E.2d at 722. Father & Son did the work and assigned the rights to its mechanic lien under the contract to Candice Co. ("Candice"). *Id.* at 360, 723. Candice recorded the lien and sent copies to Ricketts and Malone. Then Candice filed suit claiming it was entitled to the mechanics lien at 1033. Defendants successfully moved to dismiss and Candice appealed. *Id.*, 360, 723.

On appeal, the court examined the mechanic liens theory. After examining the language in the assignment of the lien from Father & Son to Candice, the court explained a contractor's assignee may file a lien claim. *Id.* at 362, 724-5. The court noted Candice did not attach the assignment to its complaint despite §2-606's[4] requirements. *Id.* at 363; 725. The court found the lien unenforceable

---

[4] Section 2-606 provides: "If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless

12

because in did not accurately describe the parties to contract that formed the basis of the lien in violation of §7 of the MLA, not because Candice failed to comply with §2-606. *Id.*, at 363-64, 725.

Plaintiff not only incorrectly cites §8b, but also incorrectly cites *Ricketts* to support his theory that §8b of the ICAA requires assignments to be attached to a collection complaint when the *Ricketts* has no such holding. As a result, Count II should be dismissed with prejudice.

### B. COUNT I - FDCPA

The FDCPA count is premised on an alleged violation of the ICAA. There is no violation of the ICAA as discussed above. Thus, the FDCPA count should be dismissed.

Plaintiff also should not be permitted to use the FDCPA to enforce the ICAA. Federal circuit courts have rejected efforts like that plaintiff makes here to transform the FDCPA into a vehicle to enforce state laws. He does not allege statements in the collection complaint are false or unfair, but objects to the pleading as being insufficient under the ICAA because the assignment was not attached to the state court pleading. *See Rice v. Great Seneca Financial Corp.* -F.Supp.2d--, 2008 WL 2169162, *5 (S.D.Ohio May 21, 2008)("Conspicuously absent from plaintiff's analysis is any FDCPA case law supporting her contention that such a procedural challenge to a state court pleading-i.e.-, the failure to attach all of the original creditor's documents-violates 15 U.S.C. §§1692e, 1692e(10) or 1692f"). But these alleged violations of Illinois law do not amount to FDCPA claims.

The *Beler* decision demonstrates the flaw in plaintiff's FDCPA theory based on the ICAA and the ICFA's applicability to collection complaints filed in state court. There, GE Capital Corporation retained Blatt to file a collection suit against plaintiff to collect on her JCPenney debt. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 472 (7th Cir. 2007). The complaint identified GE Capital Corporation as "GE Capital." *Beler*, at 472. Beler sued Blatt alleging the complaint and supporting affidavit violated §1692e because their description of the contracts among the JCPenney, Monogram Bank and GE Capital was "not clear enough to enable an unsophisticated consumer to understand the relationship among the merchant, transaction processor and creditor." *Id.* Summary judgment was affirmed for the debt collector law firm, holding:

> Section 1692e does not require clarity in all writings....A rule against trickery differs from a command to use plain English and write at a sixth-grade level. <u>Beler does not contend that the complaint was deceptive and that [Blatt] set out to trick her into paying money she does not owe, or to mislead her into paying the wrong person.</u> Whatever shorthand appeared in the complaint – the

---

the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her. In pleading any written instrument a copy thereof may be attached to the pleading as an exhibit. In either case the exhibit constitutes a part of the pleading for all purposes." 735 ILCS 5/2-606.

13

> payments system through which credit card slips flow is complex, and even many lawyers don't grasp all of its details - was harmless rather than an effort to lead anyone astray. *Id.*, at 473. (emphasis added).

The Seventh Circuit went on to reject plaintiff's §1692f claim that it is "unfair" or "unconscionable" for a debt collector to violate any other rule of positive law," and specifically held that "§1692f creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state or federal law." *Id.*, at 473-4. Thus, an FDCPA claim cannot be premised solely on the basis that a state law was violated.[5]

The *Wade v Regional Credit Ass'n*, 87 F.3d 1098, 1099 (9th Cir. 1996) decision supports *Beler*. In *Wade*, a collection agency sent a collection letter to a debtor in Idaho, a state in which the agency lacked a state-mandated collection license. The court noted that it had to determine whether violation of Idaho law constituted a violation of the FDCPA as follows:

> All of Wade's claims are based on the call from California and the notices sent to Idaho without a state permit. Idaho law prohibits persons from engaging in "either directly or indirectly in this state in the business of collecting or receiving payment for others of any account, bill, claim or other indebtedness" without obtaining a permit. Although RCA may have contravened this provision, we must determine not whether RCA violated the state statute, but whether it violated the federal Act. We disagree with Wade that debt collection practices in violation of state law are per se violations of the FDCPA. *Id.* at 1100.

In finding that violation of Idaho law did not violate the FDCPA, the court found that the violations of state law were "innocuous" and not threatening, false, unfair or unconscionable.

Similarly, in *Olvera v Blitt & Gaines*, 431 F.3d 285 (7th Cir. 2005), the Seventh Circuit rejected plaintiff's claim against a debt buyer for charging interest that was authorized by the credit agreement but allegedly higher than the ceiling imposed by an Illinois statute (815 ILCS §205/5) was a "stretch, and not merely semantically; it makes the federal statute a vehicle for enforcing a state law, and why would Congress want to do that?" *Id.*, at 287.

Plaintiff's allegations, if taken to their logical conclusion, ask this court to find automatic FDCPA liability for any claim to recover a credit card debt wherein the assignment is not attached to

---

[5] *See Carlson v First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004)("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation."); *Harvey v Great Seneca Fin. Corp., et al.*, 453 F.3d 324, 330-31 (6th Cir. 2006)("Even when viewed from the perspective of the unsophisticated consumer, the filing of a debt-collection lawsuit…..does not have the natural consequence of harassing, abusing or oppressing the debtor. Any attempt to collect a defaulted debt will be unwanted… but employing the court system… cannot be said to be an abusive tactic under the FDCPA.").

the state court pleading. But the FDCPA does not provide a federal remedy for claims stemming from collection suits. Instead, the FDCPA prohibits and polices collection practices that are in themselves unfair or false. Here, Resurgence engaged in no such practice.

### C. COUNT III - ICFA

Plaintiff's claim brought pursuant to the ICFA should also be dismissed. As is argued above, plaintiff is alleging that defendant is vicariously liable for the failure of its licensed attorneys to attach an assignment document to a state court collection complaint.

Illinois does not allow for vicarious or derivative liability under the ICFA. *Costa v Mauro Chevrolet, Inc.*, 390 F. Supp. 720, 733 (N.D. Ill. 2005); *Jackson v South Holland Dodge, Inc*, 197 Ill.2d 39 (2001); *Zekman v Direct Am Marketers, Inc*, 182 Ill.2d 359 (1988). Liability must be premised on direct participation in the allegedly deceptive act, derivative or vicarious liability is not permitted. *Id.*

Likewise, the ICFA clearly does not apply to the acts of attorneys. *Shalabi v The Huntington National Bank*, 2001 WL 777055 (N.D. Ill.); *Cripe v Leiter*, 184 Ill.2d 185 (1998). Therefore, it is inconsistent for plaintiff to allege that defendant is liable under the ICFA for acts of its attorneys when the attorneys themselves cannot be liable and defendant cannot likewise be vicariously liable.

Finally, in order to state a claim under the ICFA, a plaintiff must demonstrate: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." and these elements "must be pled with the same particularity and specificity as that required under common law fraud." *Villasenor v American Signature, Inc*, 2008 WL 904888, *3 citing Oliveira v Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002). Plaintiff has failed to allege (with particularity and specificity) a deceptive act or practice by defendant. Plaintiff has also failed to allege (with particularity and specificity) intent or actual damages.

It strains credulity to suggest that defendant, which retained licensed attorneys to draft and file collection complaints on its behalf, engaged in a deceptive act, *with intent*, in regard to the manner in which pleadings were drafted and filed (by defendant's attorneys) in Illinois state court collection cases. Plaintiff also fails to allege how he sustained actual damages as a result. For these reasons, this Court should dismiss plaintiff's ICFA claim.

Respectfully submitted,

By: s/Todd P. Stelter
    One of the Attorneys for Resurgence

David M. Schultz
Todd P. Stelter
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 08 CV 3306 |
| v. | ) |
| | ) Judge St. Eve |
| RESURGENCE FINANCIAL, LLC, | ) Magistrate Judge Cox |
| | ) |
| Defendant. | ) |

### CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2008, I electronically filed **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

**Dan Edelman**
dedelman@edcombs.com

Respectfully submitted,

By:____s/Todd P. Stelter____

David M. Schultz
Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Ste 300
Chicago, IL 60601
(312) 704-3000

17